4/30/01

THIS DISPOSITION IS
CITABLE AS PRECEDENT OF
THE TTAB

Paper No. 25
GFR

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Zanova, Inc.[1]
_____

Serial No. 75/519,495 and Serial No. 75/571,710
_____

Stacy L. Taylor of Foley & Lardner for Zanova, Inc.

M. Catherine Faint, Trademark Examining Attorney, Law
Office 103 (Daniel Vavonese, Acting Managing Attorney).
_____

Before Quinn, Wendel and Rogers,
Administrative Trademark Judges.

Opinion by Rogers, Administrative Trademark Judge:

Zanova, Inc. seeks to register ITOOL as a mark for

services identified as "computer services, namely,

providing custom services for web sites and design of web

---

[1] By an assignment document recorded in the Office's Assignment
Branch at Reel 2150, Frame 397, each of the involved applications
was transferred from Interactive Document Systems, Inc. dba APPS
Software International to Zanova, Inc.  Though the record
contains evidence of intermediate transfers, Assignment Branch
records do not.  The issues on appeal do not, however, require us
to consider chain of title issues, if indeed there are any such
issues.

sites for others"[2] and for goods identified as "computer software for use in creating web pages."[3] In each case registration has been refused under Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1). The Examining Attorney's position is that, as ITOOL is used in connection with applicant's services and as it will be used for applicant's goods, the mark is and will be merely descriptive of the goods and services.

When the Examining Attorney made the refusal final in the '495 application, applicant appealed and filed its brief on appeal. The Examining Attorney, in lieu of filing a brief, requested and was granted a remand, which is discussed below, and thereby introduced new evidence into the record with an action that continued the final refusal. In the interim, applicant had also appealed a final refusal in the '710 application, but had not yet filed a brief. Applicant sought and was granted consolidation of the two appeals. Applicant filed a response to the Examining Attorney's remand action in the '495 application, which the Board accepted as a supplemental brief for the consolidated

---

[2] Serial No. 75/519,495, filed July 15, 1998, based upon an allegation of first use of the term on August 1, 1997 and first use of the term in commerce on April 1, 1998.

[3] Serial No. 75/571,710, filed October 16, 1998, based upon an allegation of a bona fide intention to use the term in commerce.

appeals.[4]  The Examining Attorney then filed a brief and applicant filed a reply brief, each addressing both appeals.  Applicant did not request an oral hearing.

*Examining Attorney's Earlier Request for Remand*

Applicant's request for consolidation of the appeals notes that applicant argued against the remand request in the '495 application, but that "the request was nonetheless granted."  In fact, applicant's submission was not associated with the file until after the remand had been ordered.  Nonetheless, we find the remand itself to have been proper, although we have not considered all the evidence introduced thereby.

Applicant argues that the evidence introduced on remand "was available either during prosecution of the application, or otherwise before Applicant's submission of its appeal brief."  Specifically, applicant argues that information from its web site was "clearly available in an equivalent form through Applicant's website during prosecution"; that an article retrieved from the NEXIS database and dated January 4, 2000 discusses "a fifth version" of a software product, so that "[c]learly, the

---

[4] As a result of this course of prosecution, applicant never filed a separate main brief in the '710 application.  We have considered the arguments made in the main brief filed in the '495 application as equally applicable to the '710 application.

product described existed through *at least four previous versions* before January 4, 2000" (emphasis by applicant); that other articles, which concern Apple Computer's iTools service, were available before applicant's appeal brief was filed; and that there is no indication that information from an on-line acronym finder "was not accessible during prosecution [and] Applicant submits that it very likely was, in that the on-line dictionary from which the document was obtained has been in existence for several years."

Taking each of these objections in turn, we note that the information retrieved from applicant's web site was retrieved during a search conducted on the same day the Examining Attorney filed her request for remand. Moreover, the specific material retrieved from the site consists of a press release discussing an agreement between applicant and one of its customers for the customer to utilize applicant's goods or services. The date of the press release--September 29, 1999--and the date of the Examining Attorney's search that retrieved it, both are after the date of the Examining Attorney's final refusal. Accordingly, remand for introduction of this evidence was appropriate. Applicant's vague and unsupported argument that the evidence was available "in an equivalent form… during prosecution" is not persuasive.

4

In regard to the NEXIS article discussing a particular software product of another party, applicant argues that earlier versions of the product were previously available. Again, however, the argument is without support. While the article discusses version 5.0 of this product, it does not state that it is the fifth version of the product and does not divulge how many earlier versions, if any, existed. Moreover, it is the NEXIS article that discusses this product that the Examining Attorney sought to introduce on remand. That article clearly is dated many months after the Examining Attorney's final refusal. Likewise, all of the other articles retrieved from NEXIS, including the articles discussing Apple's iTools services, are dated after the Examining Attorney's final refusal. Remand for introduction of all of the articles retrieved from NEXIS and attached to the request for remand was appropriate.

Finally, in regard to the on-line dictionary evidence that ITOOLS is an acronym for "Integrated Technical Orders On-Line System," applicant argues that it "very likely" was available earlier, because the source "has been in existence for several years." Again, the argument is vague and without support. In any event, this evidence is entirely irrelevant to the Examining Attorney's refusal to register ITOOL as a mark for applicant's goods and

services, which clearly do not comprise an "Integrated Technical Orders On-Line System."

In sum, we find the Examining Attorney's request for remand proper and all the evidence that was attached thereto has been considered. We note, however, that the Office action that issued after remand was granted also included articles retrieved from NEXIS that are dated after the request for remand. The request for remand only sought permission to introduce the evidence attached thereto. It was improper for the Examining Attorney to introduce the later items into the record. We have not considered any of the evidence attached to the remand action that was not included with the request for remand.

### *The Record*

The Office bears the burden of setting forth a prima facie case in support of a descriptiveness refusal. See In re Gyulay, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987) (When the Examining Attorney sets forth a prima facie case, the applicant cannot simply criticize the absence of additional evidence supporting the refusal, but must come forward with evidence supporting its argument for registration.). To meet the Office's burden, the Examining Attorney has made of record excerpts of five articles

6

retrieved from NEXIS which reference ITool, ITools, and iTools; an on-line dictionary definition of "Internet"; evidence from an on-line acronym finder which shows that "I" can mean, among other things, "Internet"; excerpts of articles retrieved from NEXIS which explain that "I" or "i" as used in certain composite terms or domain names is intended to mean "Internet"; a computer dictionary definition of "tool"[5]; computer dictionary definitions of "e-mail" and "chat room"; many NEXIS references which use "Internet tools" or "Internet tool" in a descriptive fashion; copies of various press releases from applicant's web site which discuss its product and service; numerous NEXIS article excerpts discussing Apple Computer's iTools, a suite of Internet services available to Apple computer users at Apple's web site; and an *InfoWorld Daily News* article retrieved from NEXIS which discusses iTools software products of Tenon Intersystems, Inc.

Applicant, in the response to the remand action, which the Board has accepted as a supplemental brief, introduced

---

[5] "(1) A program used for software development or system maintenance.  Virtually any program or utility that helps programmers or users develop applications or maintain their computers can be called a tool. …"
  In the '495 application, the definition came from a traditional, printed dictionary.  In the '710 application, the same definition was introduced but was retrieved from an on-line dictionary.

copies of web pages from Apple.com, which include references to Apple's iTools. With its reply brief, applicant sought to introduce printouts from the Office's Trademark Applications and Registrations Retrieval (TARR) system regarding certain pending applications and issued registrations. In support of its request that this evidence be considered, applicant argues that either the registrations issued after it filed its response to the remand action or the "pertinence [of this evidence] became clear" only as a result of "the different focus of the arguments made in the Examining Attorney's present brief on appeal." In the alternative, applicant requests that the applications be remanded so this evidence can be considered.

We do not find consideration of applicant's proffered TARR reports appropriate. By attempting to introduce evidence with its reply brief, applicant has effectively shielded this material from review and response by the Examining Attorney. Moreover, we do not perceive any significant shift in the Examining Attorney's appeal brief arguments, when compared to those presented in the various Office actions. We do not find applicant's request for remand an appropriate alternative, primarily because it is well settled that third-party applications and

registrations are rarely probative in regard to the question of registrability presented by an application on appeal and each case is to be taken on its own merits. See In re Pennzoil Products Co., 20 USPQ2d 1753, 1758 (TTAB 1991); and In re Inter-State Oil Co., Inc., 219 USPQ 1229, 1231 (TTAB 1983). Moreover, creation of the record to be considered in an ex parte appeal must, at some point, be concluded. Accordingly, we have not considered the evidence submitted with the reply brief and deny the alternative request for remand so that the Examining Attorney can consider this evidence.[6] We now turn to the arguments.

*Arguments Presented*

Initially, based on five article excerpts retrieved from NEXIS, the Examining Attorney argued that "'Itools' appears to refer to a type of software for developing web sites for others." The Examining Attorney therefore

---

[6] We add that consideration of this evidence would, in any event, not change our decision. Applicant seeks to introduce Office records regarding applications and registrations to establish only that, in some instances, Examining Attorneys have approved for publication, rather than refused, certain marks. It is well settled, however, that the Examining Attorney who reviewed applicant's application is not bound by decisions of others on different marks, which decisions presumably were based on different records. Likewise, the Board is not bound by the decisions in those cases and must render an independent decision based on the record before us.

refused registration on the theory that, as used and intended to be used by applicant, ITOOL is and will be merely descriptive of applicant's goods and of "the type of software used by applicant to provide its services." Subsequently, the Examining Attorney adopted the position that the letter "I" is equivalent to "Internet," when used on or in connection with applicant's goods and services; that "tool(s)" is descriptive of the nature of the software applicant intends to market and which it uses to provide its services; that "Internet tool(s)" is a commonly used descriptive phrase for a wide variety of Internet software; and that consumers of applicant's goods or services would readily perceive ITOOL as a shorthand version of the phrase Internet tools.

Applicant argues, in regard to its services, that applicant hosts its customers' web sites, provides a wide variety of services in conjunction with the hosting, and "[t]he iTool [sic] service is not simply a web site development tool."  In regard to its goods, applicant argues that ITOOL is not descriptive and that its product "allows users… to create an Internet site.  ITOOL is not an Internet tool.  Rather, the mark ITOOL is suggestive of the software.  The 'I' reference suggests to consumers that the product they are licensing relates to the Internet [and]

10

'Tool' suggests to consumers that the product provides some means to assist the user but does not describe the product, for example as would the name 'web site creator.'" In its main brief, applicant expressly concedes the Examining Attorney's arguments that "I" is an abbreviation for "Internet" and that "tool" can mean "a program used for software development or system maintenance." Nonetheless, applicant argues that ITOOL is a coined term; that the term is suggestive and requires consumers to use imagination to determine what applicant's goods and services are; that the numerous references evidencing use of "Internet tools" "proves nothing"; that the Examining Attorney failed to introduce a dictionary definition of ITOOL "because one does not exist" and that this "indicates that the mark is suggestive"; and that the NEXIS evidence reveals "exactly one descriptive use of ITOOL" in a magazine article and this "single, solitary use by a journalist is not sufficient evidence" that the term is descriptive or needed by competitors to describe their products. In addition, focusing on some of the Examining Attorney's NEXIS evidence, applicant argues that "every use of the 'i' prefix to connote 'internet'… is *as part of a trademark*…." (emphasis by applicant); that purchasers of computer and Internet products "assign trademark significance to terms

composed of the prefix 'i' coupled to a descriptive term";
that such combinations can be registrable if, when taken as
a whole, they are ambiguous, incongruous or susceptible of
another meaning than that which an Examining Attorney would
ascribe; and that neither the "tool" element of ITOOL or
the composite is descriptive.

*Decision*

It is, of course, well settled that the question
whether a term is merely descriptive is determined not in
the abstract, but in relation to the goods or services for
which registration is sought, the context in which it is
being used on or in connection with those goods or services
and the possible significance that the term would have to
the average purchaser or user of the goods or services.
*See* In re Bright-Crest, Ltd., 204 USPQ 591, 593 (TTAB 1979)
and In re Recovery, 196 USPQ 830 (TTAB 1977).

A proposed mark is considered merely descriptive of
goods or services, within the meaning of Section 2(e)(1) of
the Trademark Act, if it immediately describes an
ingredient, quality, characteristic or feature thereof, or
if it directly conveys information regarding the nature,
function, purpose or use of the goods or services.  In re
Abcor Development Corp., 588 F.2d 811, 200 USPQ 215, 217-

12

218 (CCPA 1978); *see also* In re Gyulay, *supra*. It is not necessary that a term describe all of the properties or functions of the goods or services in order for it to be merely descriptive thereof; rather, it is sufficient if the term describes a significant attribute or idea about them. In re Venture Lending Associates, 226 USPQ 285 (TTAB 1985). Thus, it is not necessary, in this instance, that a prospective purchaser of applicant's goods or services be immediately apprised of the full panoply of features of applicant's goods or services for the term ITOOL to be found merely descriptive.

From the record it is clear that "Internet tool(s)" is a commonly used term and can refer to a wide variety of computer programs or program-based services relating to the Internet. For example, a July 1, 1999 *Computer Shopper* article discusses an application program called WordPro which includes an entire toolbar for accessing various "Internet Tools"; a June 21, 1999 article from *Computer Reseller News* discusses an entire business unit of Symantec Corp. devoted to "Internet tools"; a June 21, 1999 article from *Newsbytes* recites that "Internet tools and content from portal site Lycos Inc. [NASDAQ:LCOS] will be integrated into a new version of Lotus Development Corp.'s Notes R5 groupware software."; a June 8, 1999 article in *PC*

13

*Magazine* discusses a "feature-rich version of [the] Unix" operating system that "gives you superb Internet tools"; and a May 25, 1999 announcement in the *San Diego Union-Tribune* reads, in pertinent part: "Get an overview of the Internet and learn the steps to getting connected to and expanding your business on the Internet.  Demonstrations of Internet tools and process also included."

Applicant argues, however, that its goods and services are different from those "Internet tools" discussed in the Examining Attorney's evidence and that "the evidence of record does not show any descriptive use of the term 'tool' which applies in the context of Applicant's particular goods and services."  We find this argument particularly disingenuous in view of press releases posted on applicant's own web site, and in the record before us, which include the following statements:

> The private label iTOOL product enables any company to expand its product offerings by providing powerful online web site development and hosting tools through the Internet.

> Located at www.itool.com, this complete business solution features a diverse set of tools than can accommodate novice PC and Internet users as well as the most experienced developers.

> iTOOL.COM's mission is about visualizing the future of web development and offering the most complete and advanced set of Internet tools that provide everyday business solutions.

14

In short, it is abundantly clear that the term "Internet tools" not only describes a wide array of software and related services, but also aptly describes applicant's goods and services. Likewise, the evidence demonstrates that the term "tool" itself is, contrary to applicant's argument, also descriptive of applicant's goods and services. Thus, the question we are left with is whether, as applicant contends, the combination of "I" and "TOOL" creates a registrable composite. We find that it does not.

As noted above, we find the evidence of record sufficient to establish that "tool(s)" is descriptive of applicant's goods and services. Moreover, applicant concedes that "I" or "i" can mean "Internet." Applicant correctly distinguishes some of the Examining Attorney's initial proffer of NEXIS evidence as including articles wherein the "I" or "i" prefix may be evocative of terms other than "Internet." The differences in connotation, however, result from consideration of those references to ITool, ITools, and iTools in conjunction with the specific goods discussed in each article. When we consider the possible significance of "I" in ITOOL to prospective purchasers of applicant's goods or services, we find that they will readily accept "I" as meaning "Internet," and the

15

NEXIS references applicant has distinguished do not suggest otherwise.

Applicant is correct in its observation that terms which, when considered individually, are descriptive of a product or service may, nonetheless, be combined to create a trademark. We disagree, however, with applicant's conclusion that ITOOL is suggestive and find that the designation "I" and the term "tool," when combined, are no less descriptive than they are individually. *See*, *e.g.*, In re Copytele Inc., 31 USPQ2d 1540 (TTAB 1994) (combination of SCREEN FAX PHONE held merely descriptive and without incongruity resulting from combination), and In re Lowrance Electronics, 14 USPQ2d 1251 (TTAB 1989) (generic terms COMPUTER and SONAR held just as generic and not incongruous when used in combination).

The fact that ITOOL does not appear in a dictionary is not determinative. *See* In re Orleans Wines Ltd., 196 USPQ 516 (TTAB 1977). Likewise, the fact that applicant may be the first and/or one of the few entities using the term is not dispositive where, as here, the term unequivocally projects a merely descriptive connotation. *See* In re MBAssociates, 180 USPQ 338, 339 (TTAB 1973). Moreover, contrary to applicant's argument that there is no need for its competitors to use "ITOOL" or variations thereof, we

16

find the evidence establishes that there are competitors doing exactly that.

We note, in this regard, the December 16, 1996 *Edge: Work-Group Computing Report* retrieved from NEXIS and which recites that "[a] full complement of marketing Itools, including product reports, chat groups, e-mail, technical support areas, technology publications, research and even online events will be available on technologynet.com." We also note the many NEXIS references to Apple Computer's use of "iTools" for software-based services Apple makes available at its web site, including web-based e-mail, parental filtering software, online file storage and web site building and hosting. Finally, we note the January 4, 2000 *InfoWorld Daily News* article which reflects use of iTools by Tenon Intersystems Inc. for a software product featuring "a host of … Internet tools" and with versions for Apache Web servers running on Apple operating systems and for Linux-based servers.

Applicant contends that Apple's use is as a trademark, rather than as a shorthand reference to "Internet tools," but has presented no evidence in support of the argument. The Apple web pages introduced by applicant include no claim that the iTools is viewed by Apple as a trademark; nor did applicant introduce evidence of any applications or

17

registrations evidencing a claim by Apple that iTools is its trademark. Likewise, we are not persuaded by applicant's argument that Tenon's use is "as the brand name of Tenon's Apple iTools ancillary products, not as a descriptive term." Applicant infers that Tenon's use of the term iTools for a software product used on web servers which also use an Apple operating system is somehow authorized or approved by Apple. The argument fails because it presumes that iTools is an Apple mark and, as noted, we have no evidence to support this presumption. Finally, Tenon's apparent use of iTools for web servers that run on the Linux operating system, rather than an Apple system, runs counter to applicant's theory.[7]

In sum, we find that prospective purchasers of applicant's goods or services, if confronted with ITOOL used in conjunction therewith, would, without need of thought, imagination or perception, be immediately apprised of the nature of applicant's goods and services, i.e., that its software is an "Internet tool" that allows users to create a web page and its services involve using such tool to design web pages for others.

---

[7] The article discussing Tenon's products lists a web site for Tenon. Applicant has not introduced any evidence from that web site to support its argument that Tenon either claims use of iTools as a brand name of its own or uses it by authorization from Apple.

18

Decision:  The refusal of registration is affirmed.