**Application of ABCOR DEVELOPMENT CORPORATION, Assignee of Abcor, Inc.**

**Appeal No. 78–562.**

United States Court of Customs and Patent Appeals.

Dec. 14, 1978.

Richard P. Crowley, Boston, Mass., attorney of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Harry I. Moatz, Asst. Sol., U. S. Patent and Trademark Office, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, and MILLER, Associate Judges, and FORD,* Judge.

* The Honorable Morgan Ford of the United States Customs Court, sitting by designation.

MILLER, Judge.

This is an appeal from the decision of the Patent and Trademark Office Trademark Trial and Appeal Board ("board"),[1] affirming the examiner's refusal to register appellant's trademark GASBADGE on the principal register as "merely descriptive" within the meaning of section 2(e)(1) of the Lanham Act.[2] We affirm.

## BACKGROUND

Appellant's application[3] states that the goods for which the mark has been adopted are "Device to determine and monitor personal exposure to gaseous pollutants."

In its opinion, the board, citing *Ex parte International Spike, Inc.,* 190 USPQ 505, 506 (TTAB 1976), said that—

whether or not a term is merely descriptive in a trademark sense must necessarily be considered in relation to the specific goods for which registration is sought, the context in which it is used on labels, packages, or advertising material directed to these goods, the possible significance of the term in relation to the goods, and the likely reaction thereto of the average purchaser as he encounters the goods in the marketplace.

The board considered appellant's advertising literature, describing the "Walden Gas Monitoring Badge Service" and the badge,[4] and the specimen labels ("Gas Badge" appears within a parallelogram preceded by "Walden") filed with the application. It found that "[t]he purchasers and prospective purchasers of these goods are obviously aware of the function and characteristics of applicant's badges." After considering the nature of the goods and the context in which the mark was used (particularly the advertising literature), it concluded that GASBADGE "leaves nothing for speculation or conjecture" and that "[t]he term immediately and unequivocally describes the purpose and function of applicant's goods." It, therefore, held that GASBADGE is "merely descriptive" and not registrable.

Citing *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.,* 295 F.Supp. 479, 487, 160 USPQ 777, 784 (S.D.N.Y.1968), appellant argues that the proper test for determining mere descriptiveness is whether the mark conveys forthwith an immediate idea of the ingredients, qualities, or characteristics of the goods "to the ultimate consumer, who has never seen the product and does not know what it is." It contends that GASBADGE does not satisfy this test, because: (1) the mark "does not convey any idea of the ingredients, qualities, or characteristics of the goods," *i. e.,* the mark is not descriptive; and (2) the mark does not convey such an idea forthwith and immediately, and examination and study of appellant's literature is required to reach a conclusion regarding the nature of appellant's goods. Alternatively, appellant contends that, assuming the mark describes the goods, the mark is not "merely descriptive," since considerable thought (over a period of time) is required to arrive at a conclusion regarding the nature of the goods. Appellant also argues that certain third-party registrations[5] were not given full consideration.

1. Reported at 197 USPQ 547 (1978).

2. 15 U.S.C. § 1052(e)(1).

3. Serial No. 69,925, filed November 24, 1975.

4. One item describes the badge as follows:
   The Walden Gas Monitoring Badge provides a means of determining personal exposure to certain gaseous pollutants. A specially-treated element in the badge collects the gas in proportion to the product concentration and time of exposure. By standardizing and recording exposure time, gaseous pollutant determinants can be related to the eight hour time weighted average (T.W.A.) concentration encountered during exposure as required by OSHA.

5. The only one found by the board to be material was the service mark NUCLIBADGE for "determining the radiation dosages accumulated by persons exposed to X-rays and nuclear radiations and particles." The service mark GASBADGE for "analysis and reporting of the concentration of vapors and gases to which individuals are exposed" has not been made of record.

The solicitor agrees with the test used by the board and contends that determination of whether a mark is "merely descriptive" requires consideration of the mark as it is applied to the goods, and not in the abstract as proposed by appellant.

## OPINION

Marks which are "merely descriptive" of the goods or services have long been denied protection. The Supreme Court, in *Beckwith v. Commissioner,* 252 U.S. 538, 543, 40 S.Ct. 414, 416, 64 L.Ed. 705 (1920), said that—

> the law would not secure to any person the exclusive use of a trade-mark consisting merely of words descriptive of the qualities, ingredients or characteristics of an article of trade; this for the reason that the function of a trade-mark is to point distinctively, either by its own meaning or by association, to the origin or ownership of the wares to which it is applied, and words merely descriptive of qualities, ingredients or characteristics, when used alone, do not do this.

The major reasons for not protecting such marks are: (1) to prevent the owner of a mark from inhibiting competition in the sale of particular goods; and (2) to maintain freedom of the public to use the language involved, thus avoiding the possibility of harassing infringement suits by the registrant against others who use the mark when advertising or describing their own products. *Armour & Co. v. Organon Inc.,* 245 F.2d 495, 498 and 500, 44 Cust.Pat.App. 1010, 1014 and 1016, 114 USPQ 334, 337 and 338 (1957).

The Lanham Act incorporates the common law proscription against "merely descriptive" marks in section 2(e)(1) [6] as follows:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
>
> .      .      .      .      .
>
> (e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them  .    .    ..

Various tests have been used in determining whether a mark is "merely descriptive." [7] In early cases the Supreme Court [8] considered whether the mark describes the ingredients, qualities, or characteristics of the goods. This court has applied the same test.[9] It has also looked to whether the mark conveys information regarding a function, or purpose, or use of the goods.[10] Other considerations include whether the mark describes a feature or part of the goods [11] and whether it conveys information about any properties of the goods.[12] Although a mark may be generally descriptive, if it also functions as an indication of origin, it is not "merely descriptive." [13]

**6.** *Andrew J. McPartland, Inc. v. Montgomery Ward & Co.,* 164 F.2d 603, 35 CCPA 802, 76 USPQ 97 (1947), *cert. denied,* 333 U.S. 875, 68 S.Ct. 904, 92 L.Ed. 1151 (1948).

**7.** This court has indicated that "merely" means "only." *In re Colonial Stores,* 394 F.2d 549, 552, 55 CCPA 1049, 1053, 157 USPQ 382, 385 (1968).

**8.** For example, *Warner & Co. v. Lilly & Co.,* 265 U.S. 526, 528, 44 S.Ct. 615, 68 L.Ed. 1161 (1924); *Beckwith v. Commissioner, supra.*

**9.** *Andrew J. McPartland, Inc. v. Montgomery Ward & Co., supra.*

**10.** *In re Reynolds Metals Co.,* 480 F.2d 902, 178 USPQ 296 (CCPA 1973); *In re Realistic Co.,* 440 F.2d 1393, 58 CCPA 1204, 169 USPQ 610 (1971); *Modern Optics, Inc. v. Univis Lens Co.,* 234 F.2d 504, 43 CCPA 970, 110 USPQ 293 (1956); *In re W. A. Sheaffer Pen Co.,* 158 F.2d 390, 34 CCPA 771, 72 USPQ 129 (1946).

**11.** *Sylvania Elec. Prods., Inc. v. Dura Elec. Lamp Co.,* 247 F.2d 730, 114 USPQ 434 (CA 3 1957).

**12.** *See* J. Gilson, *Trademark Protection and Practice* § 2.03 at 2–31 (1977); E. Vandenburgh, *Trademark Law and Procedure* § 4.30 (2d ed. 1968).

**13.** E. Vandenburgh, *Trademark Law and Procedure, supra* at 91–92.

We note that the Seventh Circuit, in *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 379, 188 USPQ 623, 635, *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94, 191 USPQ 416 (1976), quoted A. Seidel, S. Dalroff & E. Gonda, *Trademark Law and Practice* § 406, at 77 (1963), for what it regarded as the best statement of the distinction between a descriptive and suggestive mark:

> "Generally speaking, if the mark imparts information directly, it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive."

This is similar to appellant's alternate proposed test. It is also similar to the test approved by the Second Circuit in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11, 189 USPQ 759, 765 (CA 2 1976), namely:

> A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of the goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.[14]

In *In re American Society of Clinical Pathologists*, 442 F.2d 1404, 1407, 58 CCPA 1240, 1243, 169 USPQ 800, 801 (1971), this court impliedly approved this test by stating that the service mark involved was "merely descriptive," since it "would immediately convey to one seeing or hearing it the thought of appellant's services."

■ However, implicit in this test is the requirement that descriptiveness of a mark, when applied to the goods or services involved, is to be determined from the standpoint of *the average prospective purchaser.*[15]  *In re Andes Candies, Inc.*, 478 F.2d 1264, 178 USPQ 156 (CCPA 1973); *In re Automatic Radio Manufacturing*, 404 F.2d 1391, 56 CCPA 817, 160 USPQ 233 (1969); *Blisscraft of Hollywood v. United Plastics Co.*, 294 F.2d 694, 699, 131 USPQ 55, 60 (CA 2 1961). *See* E. Vandenburg, *Trademark Law and Procedure, supra* note 12, at 92–93. Evidence of the context in which a mark is used on labels, packages, or in advertising material directed to the goods is probative of the reaction of prospective purchasers to the mark. *In re American Society of Clinical Pathologists, supra. See In re Thunderbird Products Corp.*, 406 F.2d 1389, 56 CCPA 969, 160 USPQ 730 (1969). To hold otherwise would be to separate the concept of the average prospective purchaser from the world of reality.

■ Appellant's proposed abstract test is deficient—not only in denying consideration of evidence of the advertising materials directed to its goods, but in failing to require consideration of its mark "when applied to the goods" as required by the statute.

■ Considering appellant's trademark GASBADGE when applied to appellant's goods and considering further the record evidence of appellant's advertising materials to which the average prospective purchaser is presumed to have been exposed, which clearly identify the gaseous pollutants collection function of appellant's device and its use in determining personal exposure to such pollutants, leaving nothing for the exercise of imagination when viewing the mark,[16] we agree with the board that the term GASBADGE immediately

---

14. Although citing *Stix Prods., Inc. v. United Merchants & Mfrs., Inc., supra*, 295 F.Supp. at 487, 160 USPQ at 785, it is significant that the Second Circuit did not include the phrase "to one who has never seen it [the product] and does not know what it is," which appears on the preceding page of the *Stix* opinion and is the essence of appellant's abstract test.

15. The perception of the mark to nonprospective purchasers would be irrelevant, because a mark primarily functions to indicate a single quality control source of the goods or services involved, and this is meaningful only to prospective purchasers or patrons.

16. Conceivably, a "gas badge" could be designed to detect the danger of a gaseous explosion in an area unoccupied by personnel, but such a device is clearly excluded by appellant's advertising.

and unequivocally describes the purpose and function of appellant's goods.[17]

Accordingly, we hold that GASBADGE is "merely descriptive" for purposes of section 2(e)(1) of the Lanham Act.

The decision of the board is *affirmed.*

AFFIRMED.

RICH, Judge, concurring, with whom MARKEY, Chief Judge, joins.

For all the majority's extensive review and discussion of various "tests," propounded from time to time in various places, for determining § 2(e)(1) descriptiveness, the opinion fails to state why I believe GASBADGE is "merely descriptive" under the statute.

My reasoning is very simple and requires no application of an elusive test. The ultimate in descriptiveness is the *name* of a thing. *Weiss Noodle Co. v. Golden Cracknel & Specialty Co.,* 290 F.2d 845, 48 CCPA 1004, 129 USPQ 411 (1961); *In re Cooper,* 254 F.2d 611, 45 CCPA 923, 177 USPQ 396 (1958). The description of the goods for which GASBADGE is sought to be registered, set forth as the single item of goods named in the application, is "chemically treated badge to determine and to monitor the amount of personal exposure of an individual to gaseous pollutants." This, of course, is a wordy explanation which does not qualify as a *name* in the usual sense of the word. So, what is the name of this article? Appellant's own descriptive literature of record in the PTO provides the answer. The name is "Gas Monitoring Badge." This may be regarded as the *full* name. However, the users of language have a universal habit of shortening full names—from haste or laziness or just economy of words. Examples are: automobile to auto, telephone to phone, necktie to tie, gasoline service station to gas station. I regard it as *inevitable* that a gas monitoring badge will be called a gas badge as the

name of the goods to the same extent as gas monitoring badge is the name and for that reason, and without application of some textwriter's "test," deduced from some case having dissimilar facts, I find it "merely descriptive."

Appellant's brief, I note, never comes to grips with this realistic analysis and seems pointedly to avoid discussion of the name of the object to which the mark is applied. The argument is devoted mostly to discussion of other cases which, we have repeatedly said, are of very little value in solving trademark registration problems.

Furthermore, nearly a half century of dealing with trademark problems persuades me that "descriptiveness," "mere" or otherwise, is a many-faceted question which must be decided on a case-by-case basis. I do not believe it is possible to devise any universally applicable test for determining the multifarious problems which arise under § 2(e) and (f). I note particularly that there is a big difference between a case involving the name of a thing and a case involving a mark which describes or suggests some function, ingredient, quality, or characteristic of the thing. We have here a name problem and I see no point in discussing cases of other types, which are without value as precedents, or other unhelpful generalities. It is not the function of an opinion to write a treatise but to explain why an issue is decided as it is.

The majority does not appear to read the board opinion as I do. (See footnote 17). While the board did not use the word "name" in its opinion, it used its equivalent —"appellation." It noted that the specimen labels "display the notation 'WALDEN' and the notation 'GASBADGE'" and then it immediately pointed out that the labels contain "no generic appellation for the goods * * *." To me that is equivalent to saying that GASBADGE is the *only* "appellation" appearing on the labels, espe-

---

17. We note that the board did not rest its decision on the ground that GASBADGE is the shortened form of the *name* GAS MONITORING BADGE. If the board believed that the term was the name for the goods, it would have

so held. Also, it is not for this court to indulge in speculation that at some future time the public will inevitably so regard the term. *See* 15 U.S.C. § 1,064(c).

cially when taken with the balance of the opinion which points out that the article is a *badge* and that it monitors *gas*. I think it is not speculating to say that the present name of the article is "GASBADGE" and I think I am not departing from the board's ground of refusal just because the board chose to say the mark is "merely descriptive." All names of articles are just that and always within the proscription of § 2(e)(1).

The board also said in its conclusion, " 'GASBADGE' leaves nothing for speculation or conjecture. The term immediately and unequivocally describes the purpose and function of appellant's goods." That is what *names* do. They tell you what the thing *is*. I am sure the board believed GASBADGE to be a name—in fact, a "generic" name in the sense in which trademark lawyers use that term.

BALDWIN, Judge, concurring.

I agree with both the analysis and result reached in the majority opinion and accordingly join therewith.

It appears to me that the mark for which registration is sought not only describes the purpose and function of appellant's goods, but *is* also the name of the goods.