4/18/02

**THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.**

Paper No. 13
CEW

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Fitch IBCA, Inc.
_____

Serial No. 75/628,232
_____

Ronald A. DiCerbo of McAndrews, Held & Malloy for Fitch IBCA, Inc.

Dawn J. Feldman, Trademark Examining Attorney, Law Office 111 (Craig D. Taylor, Managing Attorney).
_____

Before Cissel, Seeherman and Walters, Administrative Trademark Judges.

Opinion by Walters, Administrative Trademark Judge:

Fitch IBCA, Inc. has filed an application to register the mark PORTFOLIO UPDATE for "financial services, namely, providing information on securities, research and surveillance on securities via a global computer information network."[1]

---

[1] Serial No. 75/628,232, in International Class 36, filed January 26, 1999, based on an allegation of a bona fide intention to use the mark in commerce.

The Trademark Examining Attorney has issued a final refusal to register, under Section 2(e)(1) of the Trademark

Serial No. 75/628,232

Act, 15 U.S.C. 1052(e)(1), on the ground that applicant's mark is merely descriptive of its services.

Applicant has appealed. Both applicant and the Examining Attorney have filed briefs,[2] but an oral hearing was not requested. We affirm the refusal to register.

The Examining Attorney contends that PORTFOLIO UPDATE is merely descriptive of applicant's services because "the applicant may not provide exact numerical information on the value of an individual's portfolio; however, the applicant provides *up to date* financial information on transactions that affect the value of an individual's portfolio"; that the evidence shows that the connotation of the term "portfolio update" is not limited to information regarding numerical values of a customer's portfolio; and, that even if the connotation of "portfolio update" was limited to numerical value information, applicant's identification of services encompasses "both numerical data and financial news."

In support of her position, the Examining Attorney has submitted definitions from *The American Heritage*

---

[2] Applicant submitted evidence for the first time with its brief. The Examining Attorney's objection to consideration of that evidence because it is untimely is well taken and the evidence has not been considered. Applicant did not comply with the established rule that the evidentiary record in an application must be complete prior to the filing of the notice of appeal. *See,* 37 CFR 2.142(d); *In re Smith and Mehaffey*, 31 USPQ2d 1531, 1532 (TTAB 1994).

*Dictionary of the English Language* (3rd ed. 1992) of "portfolio" as "a group of investments" and of "update" as "information that updates[;] the act or an instance of bringing up to date."

The Examining Attorney has also submitted excerpts of articles retrieved from the LEXIS/NEXIS database which show use of the term "portfolio update."[3] Representative examples follow:

> The company's brokerage service is aimed at active traders who complete several transactions a week. It will provide live portfolio updates, charts and price and news alerts. [*The New York Times*, August 29, 1999.]

> From Intraday account balances to automated portfolio updates, fund companies are looking at providing more data – so long as they can give that data through a machine. [*The Seattle Times*, April 12, 1999.]

> If you use Morningstar's site to research mutual funds, then the site's portfolio tool may be a good fit. The familiar folder-like tabs, divided into summary, performance, intraday, fundamental and news, act as your guides. The tool consists of portfolio updates and "Portfolio X-Rays," which deliver a breakdown of each fund's individual statistics, such as P/E ratio, and also display your portfolio's average statistics, like median market cap. [*TheStreet.com*, September 23, 1998.]

---

[3] A number of the excerpts are from newswire stories. Newswire stories are of minimal evidentiary value because it is not clear that such stories have appeared in any publication available to the consuming public. *See, In re Manco Inc.,* 24 USPQ2d 1938 (TTAB 1992); and *In re Men's International Professional Tennis Council*, 1 USPQ2d 1917 (TTAB 1986). *See also*, *In re Urbano*, 51 USPQ2d 1776, 1778 fn. 3 (TTAB 1999) and cases cited therein.

Additionally, the Examining Attorney submitted copies of Internet web sites that show use of the term "portfolio update" or similar terms, such as "update a portfolio," as a topic heading.

The Examining Attorney also submitted a copy of her search results summary for the key words "portfolio update" using the Yahoo/Google search engine. With respect to this latter material, we note that the search results demonstrate the use of the phrase as key words by the search engine, which is different from evidence of use of a phrase as headings, links or content on a web site. Evidence of actual use of a phrase by a website has far greater probative value than these search summaries, which may indicate only that the two words in an overall phrase appear separately in the website literature. However, because both search engine results and web site contents are equally accessible by the consuming public (although search engine results may be retrieved only if members of the public enter the identical search strategy), they constitute evidence that the public may be exposed to the phrase "portfolio update," and the search results have therefore been considered. Nonetheless, the probative value of search

engine summary results (and web site contents themselves) will vary depending upon the facts of a particular case.

Applicant contends that "the immediately conceived meaning of the mark is [limited to] the updating of the price and/or value of stocks or mutual funds in a portfolio[,] [h]owever this is not the service provided by the Applicant."  Applicant describes its service as follows:

> More specifically Applicant's PORTFOLIO UPDATE service provides, in the form of direct e-mail notification via a global computer information network, Fitch press releases and Fitch rating actions regarding transactions to commercial mortgage-backed securities ('CMBS') which an investor has listed in his or her personalized CMBS portfolio. … The PORTFOLIO UPDATE service also provides access to surveillance screens which provide up to date information regarding CMBS, including but not limited to original and current ratings, credit enhancements, delinquency information, and collateral and certificate balances.

Applicant argues that the terms "portfolio" and "update" are "vague and incongruent"; and that one cannot tell what applicant's service is from the term PORTFOLIO UPDATE."

The test for determining whether a mark is merely descriptive is whether it immediately conveys information concerning a quality, characteristic, function, ingredient, attribute or feature of the product or service in connection with which it is used, or intended

6

to be used. *In re Abcor Development Corp.*, 588 F.2d 811, 200 USPQ 215 (CCPA 1978). See also, *In re Engineering Systems Corp.*, 2 USPQ2d 1075 (TTAB 1986); *In re Bright-Crest, Ltd.*, 204 USPQ 591 (TTAB 1979). It is not necessary, in order to find a mark merely descriptive, that the mark describe each feature of the goods or services, only that it describe a single, significant quality, feature, etc. *In re Venture Lending Associates*, 226 USPQ 285 (TTAB 1985). Further, it is well-established that the determination of mere descriptiveness must be made not in the abstract or on the basis of guesswork, but in relation to the goods or services for which registration is sought, the context in which the mark is used or intended to be used, and the impact that it is likely to make on the average purchaser of such goods or services. *In re Recovery*, 196 USPQ 830 (TTAB 1977).

The evidence submitted by the Examining Attorney clearly supports the conclusion that, when considered in connection with the services identified in the application, the term PORTFOLIO UPDATE merely describes a significant aspect of applicant's service, namely, that the service is providing an update of information relevant to a client's securities portfolio. We do not

7

find the term to be "vague and incongruent"; on the contrary, the usage of the phrase "portfolio update(s)" in the NEXIS and Internet evidence shows that this term has a readily recognized meaning.

Further, there is no need to determine whether the common usage of the term "portfolio update" is limited to numerical information or value data because applicant's recitation of services, which broadly states that applicant provides "information on securities," encompasses numerical information and value data.

In conclusion, considered in connection with applicant's services, the term PORTFOLIO UPDATE immediately describes, without conjecture or speculation, a significant feature or function of applicant's services, namely, that applicant provides information updates relevant to a customer's securities portfolio. Nothing requires the exercise of imagination, cogitation, mental processing or gathering of further information in order for purchasers of and prospective customers for applicant's services to readily perceive the merely descriptive significance of the term PORTFOLIO UPDATE as it pertains to applicant's services.

*Decision:* The refusal under Section 2(e)(1) of the Trademark Act is affirmed.