**THIS OPINION IS A**
**PRECEDENT OF THE TTAB**

Mailed:
June 18, 2007

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re IP Carrier Consulting Group
_____

Serial No. 78542726
Serial No. 78542734
_____

Louis M. Heidelberger, Esq. of Reed Smith LLP for IP Carrier Consulting Group.

M. Catherine Faint, Trademark Examining Attorney, Law Office 103 (Michael Hamilton, Managing Attorney).
_____

Before Bucher, Holtzman, and Bergsman, Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

IP Carrier Consulting Group filed two intent-to-use applications for the following marks:[1]

1. ipPICS (standard character format) for services ultimately identified as "telecommunications access services, namely subscription-based access services featuring a device that allows the user to access high speed transmission of images and video via a global computer network, computers and wireless devices";[2] and,

---

[1] Because the applications were filed by the same applicant, reviewed by the same examining attorney, and involve common issues of fact and law, we have consolidated the appeals.

[2] Application Serial No. 78542726, filed January 5, 2005.

2. ipPIPE (standard character format) for services ultimately identified as "telecommunications access services, namely subscription-based access service featuring a device that allows the user to access high speed transmission of voice, data, images, video, and audio via a global computer network, computers and wireless devices.[3]

Registration for both applications has been refused on the ground that the marks are merely descriptive pursuant to Section 2(e)(1) of the Lanham Act, 15 U.S.C. §1052(e)(1). The examining attorney contends that ipPICS "is understood to mean an Internet Protocol-based means of selecting and/or marking Internet content or downloading pictures, and this immediately describes applicant's telecommunications access services featuring a device for high-speed transmission of images and video via a global computer network." (Examining Attorney Brief, p. 2).

With respect to the ipPIPE application, the examining attorney contends that ipPIPE "is understood to mean an Internet Protocol-based connection to a communications network, and this immediately describes applicant's telecommunications access services featuring a device for high-speed access to global computer networks." (Examining Attorney Brief, p. 2).

A term is merely descriptive if it immediately conveys knowledge of a significant quality, characteristic,

---

[3] Application Serial No. 78542734, filed January 5, 2005.

function, feature or purpose of the services with which it is used. *In re Gyulay,* 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987). Whether a particular term is merely descriptive is determined in relation to the services for which registration is sought and the context in which the term is used, not in the abstract or on the basis of guesswork. *In re Abcor Development Corp.,* 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978); *In re Remacle,* 66 USPQ2d 1222, 1224 (TTAB 2002). In other words, the issue is whether someone who knows what the services are will understand the mark to convey information about the services. *In re Tower Tech, Inc.,* 64 USPQ2d 1314, 1316-1317 (TTAB 2002); *In re Patent & Trademark Services Inc.,* 49 USPQ2d 1537, 1539 (TTAB 1998); *In re Home Builders Association of Greenville,* 18 USPQ2d 1313, 1317 (TTAB 1990); *In re American Greetings Corp.,* 226 UPSQ 365, 366 (TTAB 1985).

"On the other hand, if one must exercise mature thought or follow a multi-stage reasoning process in order to determine what product or service characteristics the term indicates, the term is suggestive rather than merely descriptive." *In re Tennis in the Round, Inc.,* 199 USPQ 496, 497 (TTAB 1978). *See also, In re Shutts,* 217 USPQ

363, 364-365 (TTAB 1983); *In re Universal Water Systems, Inc.,* 209 USPQ 165, 166 (TTAB 1980).

Finally, in determining whether a mark is merely descriptive, we must consider the mark in its entirety. As argued by applicant, common words may be descriptive when standing alone, but when used together in a composite mark, they may become a valid trademark. *See Concurrent Technologies Inc. v. Concurrent Technologies Corp.,* 12 USPQ2d 1054, 1057 (TTAB 1989).

The examining attorney relied on the following evidence of the meaning of the term "IP" in both applications to support her descriptiveness refusals:

1. Definition of "IP" from the Acronym Finder at www.acronymfinder.com identifying one of the meanings of "IP" as "Internet Provider";

2. Excerpts from newspaper articles referencing providers of Internet access as "Internet Providers";

3. Definition of "Internet Service Provider" as "Companies that provide Internet access, email, etc. for fee. Also called: Point-of-Presence, ISP, and Internet Providers" from www.bitpipe.com, an IT information website that provides a dictionary of terms;

4. Definition of "IP" as an abbreviation for "Internet Protocol" which is "a connectionless, best-effort packet switching protocol. It provides packet routing, fragmentation and re-assembly through the data link layer." (FOLDOC Free Online Dictionary of Computing at foldoc.org).

6.   The "About Us" webpage from applicant's website (ipcarrier.com) discussing applicant's "forward looking concept for marketing advanced technologies and IP-based services to ordinary consumers. . . In this online, always-on, soon to be speech-enabled, personalized world of communications, the most valuable brand is the literal word itself, preceded with your, my, and IP."; and,

7.   The website for the Miami Internet Telephony Conference & Expo, February 22-25, 2005 (tmc.com), with featured sessions on VoIP.[4] Applicant's Managing Partner made a presentation entitled "Selling Services:  The IP Carrier Agent Opportunity" including a discussion regarding "the pace of innovation unfolding in VoIP services."

A.   ipPICS

To establish that consumers perceive "Pics" to mean pictures, video, or images when accessed through the Internet, the examining attorney submitted the following evidence in the ipPICS application:

1.   Definition of "Pics" as "pictures" from The American Heritage Dictionary of the English Language (3rd ed. 1992)(electronic version) and as "photographs" and "motion pictures" from Merriam-Webster Online (m-w.com); and,

---

[4] VoIP is an acronym for "Voice over Internet Protocol" which is "a protocol for transmitting the human voice in digital form over the Internet or other networks as an audio stream, instead of using traditional telephone lines."  The American Heritage Science Dictionary (2002) accessed through www.dictionary.com. The Board may take judicial notice of an online dictionary which is the electronic equivalent of a print publication that applicant may easily verify.  *In re Red Bull GmbH,* 78 UPSQ 1375, 1378 (TTAB 2006).  *See also* the entries from the following websites submitted by the examining attorney in both applications:  SearchVoIP.com, Foldoc Free on-Line Dictionary of Computers (foldoc.org), the Acronym Finder at acronymfinder.com.

    2.    Excerpts from websites regarding transmitting pictures and other images through the Internet. Those websites include the following:

        A.    The Dialup Store (thedialupstore.com) promoting Webshots (webshots.com) for a "great self-install display program that gives you flexibility for displaying pictures";

        B.    Points South, "A Full Service Internet Provider" (psouth.net) advertising Propel Accelerator, a program for facilitating Internet use by compressing images during web surfing.  This website also references sample photographs as "Today's Picks";[5]

        C.    Cebridge High-Speed Internet (cebridge.net), a high-speed Internet service, promotes its ability to download pictures, music and websites quicker and easier;[6] and,

        D.    "Rewriting the Web for Mobile Phones," an article from the July 26, 2006 issue of The Washington Post regarding the development and commercialization of Internet access through mobile telephones, and that specifically discusses Internet access to transmit television shows and download images through cell phones.[7]

---

[5] In this example, the word "Picks" is a double entendre. "Picks" can mean either "selections" or "pictures."

[6] In a comparison of the Cebridge service with dial-up Internet, Cebridge references other providers as "Internet Providers."

[7] The examining attorney also submitted evidence that "Pics" is an acronym for "platform for Internet content selection," a process that uses metadata to label webpages to help parents and teachers control what children and students can access on the Internet.  The American Dictionary of the English Language (4th ed. 2000)(electronic version), the W3C website (w3.org), and the Wikipedia online encyclopedia (wikipedia.org).  See the discussion *infra* regarding the probative value of Wikipedia entries.  Because applicant's services involve the high-speed transmission of images and video, not labeling webpages for controlling access, the evidence regarding a "platform for Internet content selection" is not relevant to our decision in this case.

We start our analysis of the registrability of ipPICS by inquiring whether ipPICS describes a function or purpose of "telecommunications access services, namely subscription-based access services featuring a device that allows the user to access high speed transmission of images and video via a global computer network, computers and wireless devices," not whether we can guess what the services are by looking at the mark.

The evidence shows that "ip" is an abbreviation or acronym for "Internet Provider" or "Internet Protocol," and that when used as a prefix for a mark, "IP" means through the Internet. The evidence regarding VoIP (Voice over Internet Protocol) shows that "IP" is understood to mean through the Internet (*i.e.,* voice communications through the Internet). In addition, applicant's website refers to applicant's concept for marketing IP-based services and how "the most valuable brand is the literal word itself, preceded with your, my, and IP." In this instance, the "literal word" is "pics" preceded by "ip." "Pics" is an abbreviation for "pictures," "photographs," or "motion pictures." When combined, ipPICS means pictures,

photographs, or motion pictures through the Internet.[8]

Applicant's services comprise providing high-speed transmission of images and video through the Internet. Both components of the mark, "IP" and "Pics," retain their descriptive meaning when combined and used in connection with the high-speed transmission of images and video. The combination of "IP" and "Pics" does not create a new term with an incongruous meaning. Thus, the mark ipPICS directly conveys to consumers that applicant's services involve the transmission of pictures (*i.e.,* images and video) through the Internet.

In responding to the descriptiveness refusals applicant submitted the Wikipedia entry for "Internet Service Provider" to show that the most common abbreviation for "Internet Provider" is "ISP." This raises the issue as to whether Internet sources in general, and Wikipedia in particular, is admissible evidence. There are inherent problems regarding the reliability of Wikipedia entries because Wikipedia is a collaborative website that permits anyone to edit the entries. *See in re Total Quality Group, Inc.,* 51 UPSQ2d 1474, 1475-1476 (TTAB 1999) (information

---

[8] In the case of ipPIPE, the "literal word" is "pipe" preceded by "ip" presumably for an Internet communication network. See the discussion regarding ipPIPE *infra.*

retrieved from the Internet is probative to the extent that it is information available to the public, and of the way in which a term is used by the public, but the weight given to such evidence must be carefully evaluated because the source is often unknown).  In fact, the "About Wikipedia" section of wikipedia.org warns users that articles can be edited by anyone with access to the Internet.  That section further explains that editors do not need any specialized qualifications to contribute.  As a result, entries, especially newer entries and recent edits, may contain significant misinformation, false or debatable information, "unencyclopedic" content, unexpected oversights and omissions, vandalism, or unchecked information that requires removal.  At any given time an article may be in the middle of an edit or controversial rewrite.  The editors provide the following warning:  "Therefore, a common conclusion is that it [Wikipedia] is a valuable resource and provides a good reference point on its subjects, but like any online source, unfamiliar information should be checked before relying on it."[9]

---

[9] The history department at Middlebury College banned the citation of Wikipedia in papers and examinations.  It has not, however, banned its use because Wikipedia "is simply too handy to expect students never to consult it."  Noam Cohen, *A History Department Bans Citing Wikipedia As a Research Source,* N.Y. Times (February 21, 2007).

On the other hand, Internet evidence is generally admissible and may be considered for purposes of evaluating a trademark. *In re Bayer Aktiengesellschaft*, ___ 3rd ___, ___ USPQ 2d ___ (Fed. Cir. 2007). *See also* TMEP §710.01(b) (4th ed. 2005)("Articles downloaded from the Internet are admissible as evidence of information available to the general public, and of the way in which a term is being used by the public. However the weight given to this evidence must be carefully evaluated because the source is often unknown"). In an analysis of the reliability of Internet sources in support of an expert opinion, the district court in the Southern District of New York determined that "the information provided there [Wikipedia] is not so inherently unreliable as to render inadmissible any opinion that references it" especially when the opposing party may "apply the tools of the adversary system to his report." *Alfa Corp. v. OAO Alfa Bank,* 475 F.Supp.2d 357, 362 (S.D.N.Y. 2007).

In view of the foregoing, the Board will consider evidence taken from Wikipedia so long as the non-offering party has an opportunity to rebut that evidence by submitting other evidence that may call into question the accuracy of the particular Wikipedia information. Our consideration of Wikipedia evidence is with the recognition

of the limitations inherent with Wikipedia (*e.g.,* that

anyone can edit it and submit intentionally false or

erroneous information).  In this case, applicant submitted

the Wikipedia information for "Internet Service Provider"

in its requests for reconsideration, and the examining

attorney had an opportunity to rebut that evidence if she

believed that the entry was incorrect.  Accordingly, we

have considered the Wikipedia entry.

As a collaborative online encyclopedia, Wikipedia is a

secondary source of information or a compilation based on

other sources.  As recommended by the editors of Wikipedia,

the information in a particular article should be

corroborated.  The better practice with respect to

Wikipedia evidence is to corroborate the information with

other reliable sources, including Wikipedia's sources.  In

this case, there is other evidence of which we can take

judicial notice to corroborate applicant's Wikipedia

evidence.  "Internet Service Provider" is defined as

follows:

> A company or organization that provides
> access to the Internet through its
> servers, usually for a fee.
> American Heritage Dictionary of
> Cultural Literacy (3rd ed. 2005).

Applicant argues that ipPICS is not descriptive

because it takes a "significant leap of imagination" to

connect ipPICS with the high-speed transmission of images and video. Applicant reasons that the most common acronym for "Internet Provider" is "ISP," not "IP." Therefore, consumers encountering the mark ipPICS would have to translate "ip" to "ISP," and "the presumed association between 'ip' and Internet provider would at least require a step of imagination." (Applicant's Brief, pp. 4-5). The problem with applicant's analysis is that it starts with the term "Internet Provider," a term that is not a component of the mark, and asks what is the most common acronym for "Internet Provider." An analysis of the mark should start with the mark at issue (ipPICS) and inquire whether that term describes the high-speed transmission of images and video, not the inquiry whether "ip" is the most common acronym for "Internet Provider." The evidence shows that "IP" means "Internet Provider" or "Internet Protocol." In either case, ipPICS directly engenders the commercial impression or meaning of pictures transmitted through the Internet.

In view of the foregoing, we find that ipPICS is merely descriptive of the purpose or function of applicant's services for transmitting images and video through the Internet.

12

B.    ipPIPE

     To show that consumers perceive the term "Pipe" to

mean a communications protocol when used in connection with

Internet communications, the examining attorney submitted

the following evidence in the ipPIPE application:

     1.    Definition of "pipe" as "a technique for passing
           information from one program process to another.
           Unlike other forms of interprocess communication
           (IPC), a pipe is one-way communication only.
           Basically, a pipe passes a parameter such as the
           output of one process to another process which
           accepts it as input. The system temporarily holds
           the piped information until it is read by the
           receiving process."  SearchEnterpriseLinux.com.
           See also SearchOpenSource.com and Folddoc.org
           attached to the examining attorney's response to
           applicant's request for reconsideration.

     2.    Netlingo.com defines "pipe" as "a way of
           stringing two programs together so that the
           output of one is fed to the other as input."
           "Pipe" is also used as slang for cable.

     3.    A discussion regarding Internet Service Providers
           at about-the-web.com, "An Internet Guide for
           Newcomers to the World Wide Web."  The entry
           explains that "most Internet traffic is carried
           on large national networks that cross the
           country.  Individual ISPs connect to this
           backbone via data pipes of varying sizes.  If the
           provider uses too small a pipe, you may face long
           waiting periods when accessing other parts of the
           Internet.  To avoid this problem, check the size
           of the data pipes used by the ISP."  This website
           also uses the terms "Internet Service Provider"
           and "Internet Provider" interchangeably.

     4.    An article in Washington Technology website
           (October 27, 1994)(washingtontechnology.com)
           regarding Internet providers in rural areas
           referenced the quality of the "pipe":  "In the
           most rural areas of the country, there are

> telecommunications problems, usually with bandwidth or the quality of the pipe that typically make accessing the Internet more difficult, slower, and more expensive."

> 5.  The ISWest Internet Specialties West website, advertises its Data Center/Colocation services as providing "Ping, Pipe and Power in a safe, secure environment to support and maintain your important applications." ISWest also identifies itself as an "Internet Provider"; and,

> 6.  The documentation for the Composite Application Manager SOA, "IP.PIPE specifies the use of the TCP protocol for underlying communications."

As we did with ipPICS *supra*, we start our analysis of ipPIPE by inquiring whether ipPIPE describes a function, purpose, feature or characteristic of "telecommunications access services, namely subscription-based access services featuring a device that allows the user to access high speed transmission of voice, data, images, video, and audio via a global computer network, computers and wireless devices," not whether we can guess what the services are by looking at the mark.

As noted previously, the evidence shows that "ip" is an abbreviation or acronym for "Internet Provider" or "Internet Protocol," and that when used as a prefix for a mark, "IP" means through the Internet. When used in connection with telecommunications services, a "Pipe" is an

14

asynchronous connection to a network.[10]  When combined,

ipPIPE means asynchronous Internet communications or an

Internet communications protocol.  Applicant's services

comprise providing high-speed transmission of voice data,

images, video, and audio through the Internet.  Both

components of the mark, "IP" and "Pipe," retain their

descriptive meaning when combined and used in connection

with the high-speed transmission of  data, images, video,

and audio.  The combination of "IP" and "Pipe" does not

create a new term with an incongruous meaning.  Thus, the

mark ipPIPE directly conveys to consumers that applicant's

services involve the transmission of data through the

Internet.

Applicant argues that ipPIPE is not descriptive

because "it would take a significant leap of imagination,

thought, and perception to take the meaning of 'ipPipe' to

describe a service that allows users to transmit voice,

data, images, video, and audio via a global computer

network, computers and wireless devices."  (Applicant's

---

[10] "Asynchronous" means without the use of fixed time intervals.
Dictionary.com Unabridged (v 1.1) based on the Random House
Unabridged Dictionary (2006).  In other words, a process for one-
way communications.

Brief, p. 6).[11]  According to applicant, "Pipe" has multiple commonly understood meanings, such as "1) 'a long tube or hollow body for conducting a liquid, gas, or finely divided solid or for structural purposes'; 2) 'a large cask of varying capacity used especially for wine and oil'; 3) 'a device for smoking usually consisting of a tube having a bowl at one end and a mouthpiece at the other'; and 4) 'a tubular wind instrument.'"[12]  Applicant concludes that because the word "Pipe" has multiple common meanings, and because the examining attorney did not provide evidence that consumers would associate the word "pipe" with one-way communications, the examining attorney has failed to establish that consumers would understand "pipe" to mean the transmission of data.  (Applicant's Brief, p. 5).

As noted above, the issue of descriptiveness is determined in relation to the services identified in the application.  The fact that "pipe" has multiple meanings, some of which are not descriptive, is not controlling or relevant to the descriptiveness analysis.  So long as any one of the meanings of a word is descriptive, the word may

---

[11]  Applicant again made the argument that "IP" is not the commonly recognized abbreviation for "Internet Provider."  For the reasons set forth in the analysis of ipPICS, we find that "IP" is readily understood to mean "Internet Provider" and/or "Internet Protocol."
[12]  <u>Merriam-Webster Online</u>, m-w.com.  (Applicant's Brief, p. 5).

16

be merely descriptive. *In re Chopper Industries,* 222 USPQ 258, 259 (TTAB 1984); *In re Bright-Crest, Ltd.,* 204 USPQ 591, 593 (TTAB 1979); *In re Champion International Corp.,* 183 USPQ 318, 320 (TTAB 1974). Accordingly, our focus is on the definition of "pipe" vis-à-vis a means of transmitting communications.

In view of the foregoing, we find that ipPIPE is merely descriptive of applicant's services for transmitting voice, data, images, video, and audio through the Internet.

Decision: The refusals to register are affirmed.