THIS OPINION IS CITABLE
AS PRECEDENT OF THE
TTAB

Mailed:
Oct. 18, 2005

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re The Place, Inc.
_____

Serial No. 76436826
_____

Thomas F. Dunn of Morse, Barnes-Brown & Pendleton, P.C. for
The Place, Inc.

Ann Kathleen Linnehan, Trademark Examining Attorney, Law
Office 114 (Margaret Le, Managing Attorney).
_____

Before Seeherman, Bucher and Grendel, Administrative
Trademark Judges.

Opinion by Grendel, Administrative Trademark Judge:

Applicant seeks registration on the Principal Register

of the mark THE GREATEST BAR (in standard character form)

for services recited in the application as "restaurant and

bar services."[1]

_____

[1] Serial No. 76436826, filed on August 1, 2002.  The application
is based on applicant's allegation of its intent to use the mark
in commerce.  Trademark Act Section 1(b), 15 U.S.C. §1051(b).

At issue in this appeal is the Trademark Examining Attorney's final refusal to register the mark on the ground that it is merely descriptive of applicant's services. *See* Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1). The appeal has been fully briefed. After careful consideration of the evidence in the record and of the arguments of counsel, we affirm the refusal to register.

A term is deemed to be merely descriptive of goods or services, within the meaning of Trademark Act Section 2(e)(1), if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services. *See, e.g., In re Gyulay,* 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987), and *In re Abcor Development Corp*., 588 F.2d 811, 200 USPQ 215 (CCPA 1978). Laudatory terms, those that attribute quality or excellence to goods or services, generally are deemed to be merely descriptive under Trademark Act Section 2(e)(1). *See In re Nett Designs Inc.,* 236 F.3d 1339, 57 USPQ2d 1564 (Fed. Cir. 2001)(THE ULTIMATE BIKE RACK is "a laudatory descriptive phrase that touts the superiority of Nett Designs' bike racks"); *In re Boston Beer Co. L.P.,* 198 F.3d 1370, 53 USPQ2d 1056 (Fed. Cir. 1999)(THE BEST BEER IN AMERICA for "beer and ale" found to be laudatory and incapable of distinguishing source).

In this case, we must determine whether THE GREATEST BAR is laudatory and merely descriptive of applicant's "restaurant and bar services." First, we find that the definite article THE and the generic term BAR are not distinctive terms, and they add no source-indicating significance to the mark as a whole. Applicant does not contend otherwise. Next, we find that the word GREATEST is laudatory and merely descriptive, and that the mark as a whole likewise is laudatory and merely descriptive.

We take judicial notice that "great" is defined, in pertinent part, as "markedly superior in character or quality to others of the same class." Webster's Third New International Dictionary (1993) at page 994.[2] The same dictionary, at page 778, defines "-est" as "used to form the superlative degree of adjectives and adverbs of one syllable." Although there is no dictionary definition of the word "greatest" per se, we find that these dictionary definitions of "great" and "-est" suffice to establish the laudatory significance of the word "greatest" in the mark THE GREATEST BAR as applied to applicant's restaurant and

---

[2] The Board may take judicial notice of dictionary definitions. *See University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983); TBMP §704.12(a)(2d ed. rev. 2004).

bar services.[3]  It immediately informs purchasers that applicant's restaurant and bar is "the greatest," i.e., "markedly superior in character or quality" when compared to other restaurants and bars.

We have considered applicant's arguments to the contrary, but are not persuaded.  First, applicant argues that the term GREATEST in its mark is not laudatory because it merely suggests the "high quality," "excellence," or "superior quality" of applicant's services, and not any feature or characteristic of the services.  However, it is those very connotations which make the term GREATEST laudatory when considered in relation to applicant's services.  In the cases cited by applicant in support of its argument, the terms in question, i.e., SUPER, 100%, and PLUS, are more vague and suggestive, in terms of laudation, than is the term GREATEST in applicant's mark.  Moreover, the terms PLUS and SUPER, cited by applicant as examples of terms which have been held to be non-laudatory, have been held in other cases to be laudatory and merely descriptive. *See Plus Products v. Plus Discount Foods, Inc*., 722 F.2d 999, 222 USPQ 373 (2d Cir. 1983)(PLUS held to be

---

[3] We note that in the *Nett Designs* case, *supra*, the court, in finding ULTIMATE to be laudatory, noted that the dictionary definitions of ULTIMATE include "representing or exhibiting the greatest possible development or sophistication," and "greatest or highest possible."  (Emphasis added.)

4

laudatory); and *In re Consolidated Cigar Co.*, 35 USPQ2d 1290 (TTAB 1995)(SUPER BUY held to be laudatory).

Likewise, the courts of appeal and this Board have held that other marks which arguably denote "high quality," "excellence" and "superior quality" are laudatory and thus merely descriptive. These include the term ULTIMATE in *In re Nett Designs Inc., supra*, and the term BEST in *In Re Boston Beer Co. LP*, *supra*. *See also In re Duvernoy & Sons, Inc.*, 212 F.2d 202, 101 USPQ 288 (CCPA 1954)(CONSISTENTLY SUPERIOR held laudatory); *Supreme Wine Co. v. American Distilling Co.*, 310 F.2d 888, 135 USPQ 481 (2d Cir. 1962)(SUPREME held laudatory); *In re Dos Padres Inc.*, 49 USPQ2d 1860 (TTAB 1998)(QUESO QUESADILLA SUPREME held laudatory); *In re San Miguel Corp.*, 229 USPQ 617 (TTAB 1986)(SELECT and its equivalent SELECTA held laudatory); *In re Inter-State Oil Co.*, 219 USPQ 1229 (TTAB 1983)(PREFERRED held laudatory); and *In re Wileswood, Inc.*, 201 USPQ 400 (TTAB 1978)(AMERICA'S BEST POPCORN held laudatory). The term GREATEST in applicant's mark THE GREATEST BAR is as laudatory, if not more so, than the marks involved in the cases cited above.

Second, applicant has made of record printouts of eight Principal Register registrations of marks which include the term GREATEST, which are registered without

disclaimers or under Section 2(f). Applicant argues that these registrations show an Office practice of allowing GREATEST marks to register. However, as expressly stated by the court in *In re Nett Designs, supra,* 57 USPQ2d at 1566, "The Board must decide each case on its own merits. … Even if some prior registrations had some characteristics similar to Nett Designs' application, the PTO's allowance of such prior registrations does not bind the Board or this court." (Internal citation omitted.)

In summary, we find that the term GREATEST in applicant's mark is laudatory and that the mark as a whole, i.e., THE GREATEST BAR, likewise is laudatory and thus merely descriptive. As noted above, the article THE and the generic term BAR do not negate the laudatory nature of GREATEST, and the mark as a whole is merely descriptive because it directly conveys to customers and prospective customers that applicant's bar is the best.

Applicant next argues that even if the mark's primary significance is laudatory, the mark is not merely descriptive because it is a double entendre, i.e., it has a second meaning which is not merely descriptive of applicant's restaurant and bar services. That second meaning, according to applicant, arises from the trade dress, theme and motif to be used and displayed in the

6

restaurant/bar itself, and in the promotion and advertisement of the restaurant/bar which will focus on that theme or motif. According to applicant, the trade dress and promotion will suggest to purchasers "a restaurant and bar room experience featuring the most notable people, places, and events in the history of the town in which the establishment is located." (Applicant's main brief, at unnumbered page 4.)

For example, in the Boston establishment, the décor and theme will focus on the "greatest" people, places and events in Boston's history, such as the Blizzard of '78 (asserted to be the greatest snowstorm in Boston's history); Ted Williams (asserted to be the greatest hitter in Boston baseball history); Aerosmith (asserted to be the greatest rock and roll band from Boston); and John F. Kennedy (asserted to be the greatest politician from Boston). These are but a few examples of the assertedly "greatest" Boston people, places and events applicant features or plans to feature in its Boston establishment.

According to applicant, these "greatest" people, places and events will be displayed and emphasized by means of video vignettes which will play in the establishment, by original artwork, by menu selections featuring dishes from the greatest area chefs, by customer voting on the greatest

local story of the week, by in-house television programming featuring the greatest moments in the restaurant and bar, and by the sale of merchandise featuring the greatest people, places and events of Boston.  In addition to these "thematic devices" which highlight the "greatest" moments, people and events of Boston, applicant asserts that the mark THE GREATEST BAR will be accompanied, in applicant's promotional materials, by the tagline "A Celebration of the Greatest People, Places, Moments and Events that Make Boston Legendary."  Applicant argues that its mark THE GREATEST BAR, when viewed in the context in which purchasers will encounter it in the marketplace, i.e., in connection with applicant's trade dress and promotional materials, evokes a double meaning that purchasers will readily appreciate, and that the mark therefore is registerable as a double entendre.

We are not persuaded.  We need not reach the issue of whether this alleged second meaning of the mark THE GREATEST BAR is itself merely descriptive of a restaurant/bar which features, by its trade dress, theme and motif, the "greatest" elements of the city in which the restaurant/bar is located.  This is because we disagree with applicant's premise, i.e., its contention that the

alleged second meaning of THE GREATEST BAR will be readily perceived by purchasers.

"Double entendre" is defined as "ambiguity of meaning arising from language that lends itself to more than one interpretation." Webster's Third New International Dictionary (1993) at p. 678. As stated in TMEP §1213.05(c), "A 'double entendre' is a word or expression capable of more than one interpretation. For trademark purposes, a 'double entendre' is an expression that has a double connotation or significance as applied to the goods or services. … The multiple interpretations that make an expression a 'double entendre' must be associations that the public would make fairly readily."

A mark thus is deemed to be a double entendre only if both meanings are readily apparent from the mark itself. If the alleged second meaning of the mark is apparent to purchasers only after they view the mark in the context of the applicant's trade dress, advertising materials or other matter separate from the mark itself, then the mark is not a double entendre. *See In re Wells Fargo & Company*, 231 USPQ 95 (TTAB 1986).

In *Wells Fargo*, the applicant was attempting to register the mark EXPRESSERVICE for "banking and trust services." The Board found that EXPRESSERVICE was

equivalent to EXPRESS SERVICE, and held that the mark was merely descriptive of a characteristic of the applicant's services, i.e., that the services are "fast in the sense of saving time for banking customers." Applicant noted, however, that its EXPRESSERVICE mark always was used in connection with its primary mark WELLS FARGO, and with marketing brochures and other materials that depicted a stagecoach and an "Old West" theme. Applicant, citing some of the same cases cited by applicant in the present case, argued that EXPRESSERVICE therefore was a double entendre because it evoked "another reminiscent or associative connotation, namely the historical connotation with applicant's predecessor which was extensively involved in the Old West" and, in particular, the Pony Express. The Board rejected the applicant's "double entendre" argument:

> There is, of course, no reasonable doubt … that the name Wells Fargo and/or the depiction of a stagecoach long associated with that name, conjure up images associated with the Old West. It is also quite clear that among these images are the "Pony Express" and the fact that Wells Fargo had a significant historical relationship with that service and generally with the "express" business during the years following the California Gold Rush in 1848 and continued to be active in this field until World War I. However, we are also persuaded by the evidence that consumers associate "Express Service" with this Old West imagery only when the term is used in association with the Wells Fargo name

10

> or with one of its allied marks (e.g., the stagecoach design).

The Board also noted:

> In its reply brief, appellant contends by way of rebuttal that we are obliged to consider the issue before us in relation to the context of its use of EXPRESSERVICE, … and that that context includes the name Wells Fargo and the depiction of a stagecoach in an Old West setting.  Thus, appellant argues that in the context of its use (i.e., in close association with the name Wells Fargo and the depiction of a stagecoach), as well as the continuing references to the word "express" in connection with Wells Fargo's historical foundation,[4] EXPRESSERVICE is bound to convey the Old West imagery, thereby supporting the proposition that appellant's mark is suggestive rather than descriptive.

The Board rejected this argument:

> The well established rule that descriptiveness issues must be analyzed in relation to the context of use does not and cannot, obviously, mean that descriptiveness of the term sought to be registered must be evaluated as if that term were used in association with other nondescriptive indicia.  In re Nash-Finch Co., 160 USPQ 210 (TTAB 1968)["The question is not whether the subject matter in association with

---

[4] Footnote 21 in the Board's *Wells Fargo* opinion, in pertinent part, states as follows:  "For example, on page 16 of Exhibit H, a sign reading 'Wells Fargo & Co. EXPRESS' is painted on the window of a room at appellant's San Francisco head office in which a collection of Old West memorabilia, including a Wells Fargo & Co. Overland Stage Coach is housed for public display." We note that applicant in the present case also relies on its public display of "Boston" memorabilia and artwork in support of its "double entendre" argument.

other trademarks is capable of distinguishing
applicant's goods but whether it is capable of
distinguishing applicant's goods without
reference to other indicia.]

We have quoted extensively from the *Wells Fargo* case
because applicant in the present case makes many of the
same arguments that were rejected by the Board in *Wells
Fargo*, and because the holding of that case with respect to
the double entendre issue is directly relevant to our
decision herein:  A mark is not a double entendre if the
second meaning is grasped by purchasers only when the mark
is used with "other indicia," even if that other indicia is
itself not merely descriptive.  In its main brief,
applicant has described the manner in which its purchasers
will encounter and then ascertain the second meaning of the
alleged double entendre as follows:

> Contrary to the assertion by the Examining
> Attorney that there is "no guesswork," the
> connection between THE GREATEST BAR and the
> "greatest" people, places and events in the
> history of a city is not immediately conveyed
> to a prospective purchaser upon encountering
> the services, i.e., upon seeing and entering
> the applicant's establishment.  Consider the
> manner in which the services are encountered
> under the mark:  the typical prospective
> purchaser is one in search of food and drink
> who, while walking the streets of a city such
> as Boston, sees the applicant's establishment.
> There is nothing about the name of the
> establishment THE GREATEST BAR that would
> immediately convey to that purchaser that he or
> she should expect to encounter services that

12

are unique other than as to their high quality; there is nothing about the manner in which this encounter occurs that immediately conveys that THE GREATEST BAR touts the "greatest" people, places and events of that particular city. Upon entering the applicant's establishment, the prospective purchaser might first pass by, for example, a picture of Fenway Park captioned as "the nation's oldest and greatest ballpark." Even at this stage, however, the connection between the seemingly random phrase "the greatest ballpark" and applicant's mark is not immediately conveyed. Rather, only after encountering the mark from the street, and once inside encountering the reference to Fenway as the "greatest ballpark," and then encountering the reference to Aerosmith as "Boston's greatest rock band" and perhaps then encountering the reference to the Blizzard of '78 as the "region's greatest snowstorm" would the light bulb go off and the average purchaser say to himself or herself, "Oh, I get it." That perception, thought and imagination – that "Aha!" moment, differentiates a merely descriptive mark from a suggestive one, and distinguishes the GREATEST BAR as a registerable double entendre.

Applicant makes this argument in order to rebut the Trademark Examining Attorney's contention that even this asserted second meaning of the mark THE GREATEST BAR is merely descriptive of applicant's restaurant/bar services.[5] However, this description of the manner in which

---

[5] As noted above, we need not and do not reach the issue of whether the second meaning of applicant's mark is merely descriptive or instead is suggestive. What matters is that the mark's primary significance is merely laudatory, and that the second meaning of "greatest" claimed by applicant would not be "fairly readily" appreciated by purchasers, a fact which precludes a finding that the mark is a double entendre.

prospective purchasers will encounter the mark and understand its "second meaning" is highly relevant to our determination of the double entendre issue, i.e., whether the second meaning of the mark will be "fairly readily" understood by purchasers. It appears from applicant's own contention as to how purchasers will come to understand the asserted second meaning of applicant's mark that the double entendre will not be "fairly readily" ascertained by purchasers. Instead, it is only in the context of what the Board in *Wells Fargo* called "other indicia" surrounding use of the mark, e.g., the Boston-themed memorabilia and artwork on the walls of the establishment, that the double entendre will be understood by purchasers. The alleged double entendre does not inhere in the language of the mark itself; the mark therefore is not a double entendre.

We also note that although applicant's intention and/or current practice is to use its "greatest" theme and motif in its restaurant/bars, the recitation of services in the application is not limited to such use. Under the terms of the registration applicant seeks, applicant would be free to change the "greatest" theme and motif at any time, and thus find itself to be the owner of what is the laudatory and merely descriptive mark THE GREATEST BAR.

14

The Board addressed this issue in the *Wells Fargo* case as follows:

> Another way of looking at it is that since the other concededly registerable indicia are not part of the matter sought to be registered, the presumed right to exclude others from using EXPRESSERVICE which would be accorded appellant by registration of that term is not limited to its use in association with Wells Fargo and/or the stage coach design. Consequently, the effect of these other indicia on consumer perceptions cannot be considered in our determination whether its registration would be contrary to the provisions of Section 2(e)(1).

Finally, we find that this case is distinguishable from the double entendre cases relied upon by applicant, because in those cases the double entendre was apparent on the face of the mark itself. For example, in *In re Colonial Stores Inc.*, 394 F.3d 549, 157 USPQ 382 (CCPA 1968), the court found that the mark SUGAR & SPICE for bakery products was a double entendre, because it immediately connoted both the ingredients of the bakery products and the well-known nursery rhyme phrase "sugar & spice and everything nice." In *In re National Tea Co.*, 144 USPQ 286 (TTAB 1965), the Board held that the mark NO BONES ABOUT IT for ham immediately connoted both the fact that the ham was boneless and the commonly used phrase "no bones about it." Other examples of cases in which the marks were

found to be double entendres are *In re Happy Baby Carrier Company*, 179 USPQ 864 (TTAB 1973)(NAPSACK a double entendre as applied to baby carriers); and *In re Horsman Dolls Inc*., 185 USPQ 639 (TTAB 1975)(CRY BABY a double entendre as applied to dolls that "cry real tears").

In summary, and for the reasons discussed above, we find that applicant's mark THE GREATEST BAR is not a double entendre. Instead, we find that it is a laudatory and merely descriptive mark as used in connection with the services recited in the application, i.e. "restaurant and bar services." We have carefully considered all of applicant's arguments to the contrary (including those not specifically mentioned herein), but are not persuaded. We conclude, without doubt, that applicant's mark is merely descriptive, and that it therefore is barred from registration under Trademark Act Section 2(e)(1).

Decision: The refusal to register is affirmed.