THIS DECISION IS CITABLE
AS PRECEDENT OF THE
TTAB

Mailed: 3/8/06

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————

**Trademark Trial and Appeal Board**
————

In re Classic Media, Inc.
————

Serial No. 78278235
————

Sonja Keith, Esq. for Classic Media, Inc.

Charles L. Jenkins, Jr., Trademark Examining Attorney, Law Office 105 (Thomas G. Howell, Managing Attorney).
————

Before Seeherman, Quinn and Walters, Administrative Trademark Judges.

Opinion by Quinn, Administrative Trademark Judge:

An application was filed by Classic Media, Inc. to register the mark SATURDAY MORNING T.V. for "entertainment in the nature of on-going television programs in the field of comedy."[1]

The trademark examining attorney refused registration under Section 2(e)(1) of the Trademark Act, 15 U.S.C.

---

[1] Application Serial No. 78278235, filed July 24, 2003, based on an allegation of a bona fide intention to use the mark in commerce.

§1052(e)(1), on the ground that applicant's mark is merely descriptive of the services.

When the refusal was made final, applicant appealed. Applicant and the examining attorney filed briefs. An oral hearing was not requested.

Applicant argues that its mark

> is intended for use on a compilation of classic television programs which may include such famous television shows as "Mr. Magoo," "Casper & Friends," "The Lone Ranger," "Lassie," "Sgt. Preston of the Yukon," and "Shari Lewis & Friends" (Lambchop). Such product is intended to appeal to the older viewer and evoke the memory of a time during the 1950's and 1960's when extensive children's programming appeared exclusively on Saturday mornings. The mark will not be used to describe goods that are aired on television on Saturday mornings. Instead, the mark suggests the nostalgic nature of the programming offered in the intended product.

(Appeal Brief, unnumbered p. 2). Thus, applicant contends the mark is not merely descriptive of the services.

The examining attorney maintains that the mark merely describes entertainment services in the nature of television programs that were once shown on Saturday mornings. According to the examining attorney, "it has become accepted in the television industry through the years that classic comedy programs that were once shown on

Saturday morning whether they are cartoons or regular television shows are referred to as 'Saturday Morning T.V.'" (Brief, unnumbered p. 3). The examining attorney contends that, because the matter sought to be registered has a specific meaning in television parlance, the matter is merely descriptive of entertainment services featuring television programs that have been broadcast on Saturday mornings. In support of the refusal, the examining attorney submitted numerous excerpts of articles retrieved from the NEXIS database, as well as a dictionary listing showing "TV" as an abbreviation for "television." The American Heritage Dictionary of the English Language (3d ed. 1992).

Before turning to the merits of the refusal, an evidentiary point requires our attention. Applicant, in its brief, referred to two third-party registrations issued on the Principal Register, asserting that these marks are similar to applicant's mark, and that, accordingly, applicant's mark should be allowed to register. The examining attorney objected to this late submission.

Trademark Rule 2.142(d) provides that the record in an application should be complete prior to the filing of an appeal. Additional evidence filed after appeal normally will be given no consideration. TBMP §1207.01 (2d ed. rev.

2004).  Further, applicant merely referred to the registrations in its brief; no copies of the registrations were submitted and a mere listing is insufficient to make such evidence of record.  In re Dos Padres Inc., 49 USPQ2d 1860, 1861 n. 2 (TTAB 1998).  Accordingly, the third-party registrations were neither timely nor properly made of record, and they have not been considered in our determination of mere descriptiveness.  We hasten to add that the two third-party registrations, even if considered, would not compel a different result in this case.  In re Nett Designs Inc., 236 F.3d 1339, 57 USPq2d 1564, 1566 (Fed. Cir. 2001) ["Even if prior registrations had some characteristics similar to [applicant's] application, the PTO's allowance of such prior registrations does not bind the Board or this court."]; and In re Best Software Inc., 58 USPQ2d 1314 (TTAB 2001).

We now turn to the merits of the refusal.  A term is merely descriptive of goods or services, within the meaning of Trademark Act Section 2(e)(1), if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services.  See, e.g., In re Gyulay, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987); and In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978).  A

4

term need not immediately convey an idea of each and every specific feature of the applicant's goods or services in order to be considered merely descriptive; it is enough that the term describes one significant attribute, function or property of the goods or services.  See In re H.U.D.D.L.E., 216 USPQ 358 (TTAB 1982); and In re MBAssociates, 180 USPQ 338 (TTAB 1973).

Whether a term is merely descriptive is determined not in the abstract, but in relation to the goods or services for which registration is sought, the context in which it is being used or is intended to be used on or in connection with those goods or services, and the possible significance that the term would have to the average purchaser of the goods or services because of the manner of its use or intended use.  That a term may have other meanings in different contexts is not controlling.  In re Polo International Inc., 51 USPQ2d 1061 (TTAB 1999); and In re Bright-Crest, Ltd., 204 USPQ 591, 593 (TTAB 1979).  It is settled that:

> ....the question of whether a mark is
> merely descriptive must be determined
> not in the abstract, that is, not by
> asking whether one can guess, from the
> mark itself, considered in a vacuum,
> what the goods or services are, but
> rather in relation to the goods or
> services for which registration is
> sought, that is, by asking whether,

> when the mark is seen on the goods or
> services, it immediately conveys
> information about their nature.

In re Patent & Trademark Services Inc., 49 USPQ2d 1537,

1539 (TTAB 1998).

The examining attorney, in support of the refusal,

introduced several excerpts of articles retrieved from the

NEXIS database showing descriptive uses of the phrase

"Saturday morning television."[2]  The excerpts fall within

two main categories.  The first category pertains to

contemporary Saturday morning television programming.  A

sample is shown below.

> RECESS:  SCHOOL'S OUT.  It's not
> terrible, but this Saturday-morning-TV-
> to-big-screen comedy seemed more like
> "Ho-hum.  Another 30-minute Cartoon
> Expanded to 90 Minutes."
> (Deseret News, March 11, 2001)
>
> Disney is even pulling Mickey Mouse,
> Goofy and Donald Duck out of retirement
> to create a series of "MouseWorks"
> cartoons for Saturday morning
> television and theaters.
> (Fresno Bee, March 11, 1999)
>
> Daniel is best known for his starring
> role on the Saturday morning television
> situation comedy, "City Guys."
> (Hartford Courant, February 23, 1998)

---

[2] One of the printouts is taken from United Press International,
a wire service.  There is nothing in the record to indicate that
this wire report was distributed; thus, it is entitled to only
minimal probative value in that we cannot judge the public's
exposure to the use of the phrase in the wire report.  See In re
Cell Therapeutics Inc., 67 USPQ2d 1795, 1798 (TTAB 2003).

...it's pretty hopeless, either as vaudeville nouveau, comedy, social comment or even a Saturday morning TV cartoon, which it half resembles.
(<u>The San Francisco Chronicle</u>, April 9, 1992)

The animation barely approaches the level of contemporary Saturday morning TV.
(<u>Los Angles Times</u>, December 16, 1991)

They watch it the way they watch Saturday morning television.
(<u>The Boston Globe</u>, September 18, 1988)

Attempts to license toys based upon electronic game characters or Saturday morning television shows have met with only limited success.
(<u>Lancaster New Era</u>, January 29, 2004)

Those of us who are not frequent viewers of Saturday morning television shows, and their accompanying commercials, had some difficulty recognizing the toys the children wanted, such as Bob the Builder.
(<u>Tri-Valley Herald</u>, December 14, 2003)

A second group of the excerpts involves use of the phrase "Saturday morning T.V." (or television) in connection with classic television shows dating back to the 1950s-1960s. A sample is shown below.

Baby boomers grew up watching "Little Rascals" comedies on Saturday morning television.
(<u>Daily Oklahoman</u>, April 15, 1994)

"I will forever cherish my Saturday morning TV viewing."
(<u>The News-Press</u>, September 13, 2004)

> Will today's tender youth ever know the
> cheap thrill of a Saturday morning TV
> series populated entirely by marionette
> action figures, with the strings
> clearly attached?
> (The Pantagraph, July 29, 2004)
>
> The folks at Rhino Home Video are
> partnering with TV Land to bring H.R.
> Pufnstuf, a mainstay of Saturday
> morning television in the 1970s and
> 1980s...
> (USA Today, February 3, 2004)
>
> The exact lineup escapes me, but the
> usual Saturday morning television fare
> when I was growing up included "Sky
> King," Mighty Mouse," "The Lone Ranger"
> and "Fury."
> (Topeka Capital-Journal, January 25,
> 2004)
>
> For a child of the '50s, Saturday
> morning television was a rite of
> passage.  A recitation of titles from
> that era is enough to give a boomer
> chills...
> (Promo, January 1, 2004)

Based on the record before us, we find that the phrase SATURDAY MORNING T.V., if used in connection with applicant's "entertainment in the nature of on-going television programs in the field of comedy," would be merely descriptive thereof.  Applicant states that it intends to use the mark for a compilation of classic programs that appeared on Saturday morning television, specifically mentioning "Mr. Magoo," "Casper & Friends," "The Lone Ranger," "Lassie," "Sgt. Preston of the Yukon,"

8

and "Shari Lewis & Friends."  The NEXIS evidence shows use of "Saturday morning T.V." (or television) to describe this particular type or genre of television programming. Although the phrase may evoke nostalgic feelings among baby boomers who watched the shows as children, more importantly the phrase immediately describes, without conjecture or speculation, a significant characteristic of the services, namely, that applicant's on-going television programs comprise shows of the type or genre that once appeared on Saturday morning television.

We also note that applicant's recitation "entertainment in the nature of on-going television programs in the field of comedy" is broad enough to encompass contemporary television programming.  The evidence shows that the applied-for mark would be descriptive of such services, also, in that it describes a recognized type of television program, namely, television programs shown on Saturday mornings.

**Decision:**  The refusal to register is affirmed.