```
THIS OPINION
IS A PRECEDENT
OF THE TTAB
```

Mailed:  September 16, 2009

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

Anheuser-Busch, Incorporated

v.

Kelly J. Holt
_____

Opposition No. 91180119
to Application Serial Nos. 77065796, 77063889 and 77090584

_____

Daniel D. Frohling and Seth A. Rose of Loeb & Loeb LLP for
Anheuser Busch, Inc.

Daniel R. Johnson and Melissa S. Hockersmith of Ryan Kromholz &
Manion, S.C for Kelly J. Holt.
_____

Before Walsh, Taylor and Ritchie, Administrative Trademark
Judges.

Opinion by Taylor, Administrative Trademark Judge:

Kelly J. Holt ("applicant") seeks registration on the

Principal Register of the following marks:

Serial No. 77063889[1]
BEER 1 (in standard characters) for "beer" in International
Class 32.  Beer has been disclaimed.

---

[1]  Filed December 13, 2006 and reciting a bona fide intention to
use the mark in commerce.

Serial No. 77065796[2]
ONE BEER, BEER 1 (in standard characters) for "beer" in International Class 32. Beer has been disclaimed.

Serial No. 77090584[3]



for "beer" in International Class 32. Beer and MMVII have been disclaimed.

Opposer, Anheuser-Busch, Incorporated, has opposed registration of all three marks on the same alternative grounds, namely that they: (1) are merely descriptive and lack secondary meaning; or (2) are deceptively misdescriptive and lack secondary meaning.[4] Opposer

---

[2] Filed December 15, 2006 and asserting a bona fide intention to use the mark in commerce.

[3] Filed January 24, 2007 and asserting a bona fide intention to use the mark in commerce. The application includes the following statement: "The mark consists of three concentric bands framing the word BEER over a large numeral 1. Three diagonal bands cut across and behind the numeral 1 from the upper left internal border of the oval to the lower right internal border of the oval. Pictoral [sic] representation of a mug of beer located to the lower left side of the numeral 1. Pictoral [sic] representation of a rising sun and the year 2007 in Roman numerals located to the upper right side of the numeral 1. Pictoral [sic] representation of two barley heads beginning at a point just below the bottom of the external border of the oval, curving upward to the left and right along the external area of the oval."

[4] Applicant also pleaded that all three marks are so highly laudatory that they are inherently incapable of functioning as

particularly alleges that it and its predecessors have been marketing beer for more than a century, and opposer is the leading brewer and marketer of beer in the United States; that, as regards its descriptiveness claim, applicant's applied-for marks "identify and/or describe a beer that has won an award or is ranked number '1,' and are therefore descriptive of the goods covered in the applications and have not acquired distinctiveness" (not. of opp. ¶ 6); that, as regards its deceptively misdescriptive claim, "[o]n information and belief, beer marketed, offered for sale or sold by Applicant under the alleged marks would reasonably be expected by consumers to have won an award as the number '1' beer or to be ranked the number '1' beer[; o]n information and belief, there is no award, ranking or the like signified by Applicant's alleged marks" (not. of opp. ¶¶ 10-11); and that if applicant were granted registration of his applied-for marks, applicant would obtain *prima facie* rights to the exclusive use of those marks, all to the damage of Opposer.

Opposer also requests that, in the event the Board finds that any of applicant's applied-for marks are not wholly merely descriptive or deceptively misdescriptive and,

---

trademarks.  That claim, however, was neither tried nor argued in the briefs.  Accordingly, we consider it withdrawn.

thus, are capable of registration, the Board order all non-disclaimed descriptive aspects of the marks be disclaimed.

Applicant, in his answer, admits that "opposer markets beer" (Answer ¶ 1), that "if Applicant were granted registration of his alleged marks, Applicant would obtain certain statutory rights, including prima facie rights to the exclusive use of the alleged marks" (Answer ¶ 1) and that applicant's marks have not acquired distinctiveness or secondary meaning (Answer ¶ 6), but otherwise has denied the salient allegations of the combined notice of opposition.

## THE RECORD

By operation of Trademark Rule 2.122 the record includes the pleadings and the files of the subject applications. In addition, during its testimony period, opposer submitted the testimony deposition, with exhibits, of Gregory Ward, Ph.D., a linguistics expert; a notice of reliance on applicant's responses to opposer's first set of interrogatories, Nos. 1, 5, 7 and 14-17; and a notice of reliance on opposer's second supplemental response to Interrogatory No. 1 of applicant's first set of interrogatories (submitted to clarify the record). Applicant, during his testimony period, submitted a notice of reliance on opposer's responses to applicant's first set of interrogatories, Nos. 1, 7, 8 and 13; the definition of the word "one" (taken from the second edition of Random

House Webster's College Dictionary); and applicant's response to opposer's first set of interrogatories, Nos. 10 and 12 (submitted to prevent misinterpretation of its responses to interrogatory nos. 7 and 14).

**STANDING**

To establish standing, opposer must show a real interest in the proceeding. Ritchie v. Simpson, 170 F.3d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999). Generally, where a claim of mere descriptiveness is asserted, it is sufficient for the plaintiff to establish that it is engaged in the manufacture or sale of the same or related products, i.e., is a competitor, or that the product in question is within the normal field of expansion of the plaintiff's business. Plyboo America, Inc. v. Smith & Fong Co., 51 USPQ2d 1633 (TTAB 1999); and Binney & Smith, Inc. v. Magic Marker Industries, Inc., 222 USPQ 1003, 1010 (TTAB 1984). In this case opposer, in the notice of opposition, alleged:

> 1. Opposer and its predecessors have been marketing beer for more than a century, and Opposer is the leading brewer and marketer of beer in the United States.

While applicant did not admit to all of the allegations contained in the paragraph, applicant did admit that "opposer markets beer." Answer at ¶1. In view of this admission, we find that opposer has established that it is a competitor of applicant in the beer market and, therefore,

has demonstrated its standing to challenge the registration of the involved applications.

**MERE DESCRIPTIVENESS**

We first consider opposer's claim that all three of applicant's applied-for marks, "BEER 1," "ONE BEER, BEER 1" and "BEER 1 MMVII and design," merely describe the goods identified thereunder, namely, beer.  Opposer has primarily supported this contention with the testimony (and report) of a linguistic expert, Professor Gregory Ward, Ph.D., a professor of linguistics at Northwestern University. Professor Ward indicated that he used "standard analytic techniques" in the linguistics field in reaching the conclusion that, taken as a whole, applicant's marks would be understood by native speakers of American English as descriptive of applicant's goods.  Professor Ward also indicated that he familiarized himself with what the term "descriptive" meant in a legal context before conducting his analysis.[5]

---

[5]  Professor Ward particularly stated:
Q.  Can you tell us what Exhibit 3 is?
A.  Yes.  Exhibit 3, … also consists of the section from McCarthy that I mentioned earlier [Sections 11:27 of McCarthy on Trademarks and Unfair Competition (2007)] and a section on "merely descriptive" marks that I mentioned earlier as well.
Q.  The section on merely descriptive marks is from what corpus?  What body of work?
A.  From the TMEP.
Q.  And is the TMEP the Trademark Manual [sic] Examining Procedure?
A.  Yes, it is.

With respect to the mark BEER 1, opposer points to the disclaimer by applicant of the term "beer" and argues, based on the Ward testimony, that "[g]iven that '1' follows and modifies the noun 'beer,' … the term '1' denotes a rank or ordering and the phrase 'BEER 1' conveys that the beer in question is ranked or ordered number 1 such that any native speaker of American English would, upon encountering the phrase 'BEER 1,' immediately understand it to identify a ranking of beers, i.e., that the product in question is ranked number 1." (Brief at pp. 12-13 citing to Ward Dep., Ex. 2, pp 8-8; Ward Dep. Pp. 23:3-9, 24:20-24, 26:13-16 and 45:17-21).[6]

---

Q. Did you read these documents in conjunction with the preparation of your report?
A. I did.
Q. And did these documents affect the methodology you used in preparing your report"
A. They did.
Q. Can you explain how?
A. Yes.  In order to address the question of whether the marks in question were descriptive, I needed to have an understanding of the term "descriptive" in a legal context.
Q. And then knowing what "descriptive" meant in a legal context, how did that affect the methodology you chose?
A. It informed me as to how to conduct the linguistic analysis in order to address the issue of whether or not the marks in question were descriptive.

[6] Professor Ward particularly testified, in part, that:  "[i]n this case 'Beer 1,' 'beer' is the noun, 'one' is the post-nominal modifier; therefore, the expression 'BEER 1' is that it refers to a ranking or ordering of beer in some way with the ranking or ordering being "1."  (Ward Dep. p. 25).

With regard to the mark ONE BEER, BEER 1 opposer states that given that "ONE BEER" is a more straight-forward linguistic construct, Professor Ward, in addition to his expertise in the field of linguistics, was "able to rely on his intuitions as a native speaker" in analyzing the "ONE BEER" component of the mark. Based on the Ward testimony, opposer contends that since a number coming before a noun identifies a quantity or amount, "ONE" denotes a set that has one and only one member, and that while the set is undefined, the only "plausible" interpretation in the marking/branding context is that it can only be a category (e.g., brand, style, source, etc.) of beer. That is, it would be nonsensical to deduce that, in a trademark/branding context "one beer" would be understood by consumers as referring to a single can. (Opposer's brief pp. 7-8, citing to the Ward Dep., Ex. 2, p. 10-11).

Opposer then contends:

Putting the components together, Professor Ward logically concluded that "One beer, BEER 1" means that there is only one brand (or style, source, etc., of beer) and this beer is ranked #1. … Stated in simple terms, (and for illustrative purposes, inserting "brand" as the category), a consumer would interpret "One beer, BEER 1," to mean "there is only one brand of beer and that beer is ranked #1."

(Applicant's brief p. 14, citing Ward Dep. at 33:6-20, 36:13-20, and 59:4-60:14; Ward Dep., Ex. 2, p. 11).

Last, with regard to the mark BEER 1 MMVII and design, opposer notes the disclaimer of the terms "beer" and "MMVII" (the Roman numerals for 2007) and, citing to applicant's response to opposer's interrogatory request No. 14, contends that "applicant has admitted that the image in the lower left area of the oval is a 'Pictoral [sic] representation of a mug of beer', and the grain depicted around the bottom of the oval is barley, a common ingredient used in brewing beer … [and] the roman numeral and rising sun in the upper right area of the oval identify 'the year of establishment of the BEER 1 brand.'" (Opposer's brief p. 14).[7] It is therefore obvious, opposer asserts, that the visual representation of the applied-for mark depicts various elements that all identify or describe important features or characteristics of applicant's beer. Opposer further asserts that, as concluded by Professor Ward, "the meaning of 'BEER 1,' the shape of the logo, and the sash all lead to the overall

---

[7] Interrogatory 14 and applicant's response is as follows:
14. Describe the message Applicant intends to convey to consumers from its use of BEER 1 MMVII and Design as a trademark for Applicant's beer.

RESPONSE:
Applicant intends to convey through the rising sun and roman numerals MMVII, the year of establishment of the BEER 1 brand. The barley heads are symbolic of natural ingredients. The single mug of beer is symbolic of purity, tradition, and simplicity.

impression of the Alleged Mark being a medal or award or some type of ranked representation" and, thus, the mark serves to describe a characteristic, quality, feature or attribute of the beer bearing the applied-for mark." (Opposer's brief p. 15 citing to Ward Dep., Ex. 2, p. 13).

In response, applicant argues that:[8]

> Opposer has not met their [sic] burden of proving by a preponderance of evidence that any of the marks at issue are merely descriptive. On the spectrum of distinctiveness, each of the above referenced marks [BEER 1; ONE BEER, BEER 1; and BEER 1 MMVII& Design] is at least suggestive of the goods upon which it is to be used.

(Applicant's brief p. 1). Applicant, citing 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 11.67 at 11-150 (4th ed. 2008), further points out that the Board will accord little value to the expert opinion of a linguist on the ultimate issue of the descriptiveness of a particular term.

Applicant particularly argues that the word "one" or the number "1" may have many different interpretations and,

---

[8] In framing his arguments against opposer's allegations of mere descriptiveness, applicant contends that the Board has "adopted a three part test to determine whether a mark is descriptive: degree of imagination; competitor's use; and competitor's need" (applicant's brief p. 4), and suggests by his arguments that opposer must demonstrate mere descriptiveness based on all three tests. Applicant is mistaken. In a recent decision, the Board reiterated that "the [only] test for descriptiveness is whether a term 'immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used.'" In re Carlson, 91 USPQ2d 1198, 1203 (TTAB 2009) (internal citations omitted).

thus, its mark BEER 1 is susceptible to many meanings, none of which immediately conveys a message about a quality, characteristic, or ingredient of the goods sold under the BEER 1 mark. Applicant further argues, with regard to his ONE BEER, BEER 1 mark, that opposer's expert failed to identify any specific message that the mark delivers about any specific quality or characteristic of the product and, therefore, the mark is at most suggestive. Last, with regard to his BEER 1 MMVII and design mark, applicant contends that opposer's own expert report shows that the mark is at most suggestive as applied to beer by Professor Ward's use of such terms as "suggests" and "evokes."

A term is merely descriptive of goods, and therefore unregistrable under Trademark Act Section 2(e)(1), if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods. See, e.g., In re Gyulay, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987); and In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978). Whether a particular term is merely descriptive is determined not in the abstract, but in relation to the goods for which registration is sought, the context in which it is being used or is intended to be used on or in connection with those goods, and the possible significance that the term would have to the average purchaser of the goods

11

because of the manner of its use or intended use.  In re Tower Tech Inc., 64 USPQ2d 1314, 1316-17 (TTAB 2002) ("The question is not whether someone presented with only the mark could guess what the goods or services are.  Rather, the question is whether someone who knows what the goods and services are will understand the mark to convey information about them.").  In addition, a visual representation that consists merely of an illustration of the goods, or of an article that is an important feature or characteristic of the goods or services, is merely descriptive under Section 2(e)(1) of the Act.  *See* In re Society for Private and Commercial Earth Stations, 226 USPQ 436 (TTAB 1985) (representation of satellite dish held merely descriptive of services of an association promoting the interests of members of the earth station industry); In re Underwater Connections, Inc., 221 USPQ 95 (TTAB 1983) (pictorial representation of a compressed air gas tank held merely descriptive of travel tour services involving underwater diving).

However, a mark is suggestive if, when the goods or services are encountered under the mark, a multi-stage reasoning process, or the utilization of imagination, thought or perception, is required in order to determine what attributes of the goods or services the mark indicates. See, e.g., In re Abcor Development Corp., 200 USPQ at 218,

12

and In re Mayer-Beaton Corp., 223 USPQ 1347, 1349 (TTAB 1984). As has often been stated, there is a thin line of demarcation between a suggestive mark and a merely descriptive one, with the determination of which category a mark falls into frequently being a difficult matter involving a good measure of subjective judgment. See, e.g., In re Atavio, 25 USPQ2d 1361 (TTAB 1992) and In re TMS Corp. of the Americas, 200 USPQ 57, 58 (TTAB 1978). The distinction, furthermore, is often made on an intuitive basis rather than as a result of precisely logical analysis susceptible of articulation. See In re George Weston Ltd., 228 USPQ 57, 58 (TTAB 1985).

Opposer must prove its claims of mere descriptiveness by a preponderance of the evidence. *Plyboo America*, 51 USPQ2d at 1639, citing 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 20.16 (3d ed. 2002). Opposer does not meet this burden as to any of the involved marks inasmuch as opposer did not present evidence sufficient to establish that the marks are merely descriptive in the beer industry or to the relevant consuming public.

With regard to all three marks at issue, opposer has almost exclusively relied on the testimony of a single expert witness, Professor Gregory Ward, to prove its claims that applicant's applied-for marks are merely descriptive of

the goods they identify. Professor Ward opines that, taken as a whole, applicant's marks would be understood by native speakers of American English as descriptive of applicant's goods. Opposer further states, in essence, that applicant offered no evidence of its own as to consumers' understanding of the alleged marks and has made "erroneous and misplaced" criticisms of Professor Ward's analysis and findings.

We point out, however, that although an opinion of an asserted expert in linguistics may have some probative value, it is not dispositive on the ultimate determination of descriptiveness. *See Plyboo America*, 51 USPQ2d at 1639. As the Board noted in *Plyboo,* 51 USPQ2d 1640, by quoting from Tanners' Council of America, Inc. v. Scott Paper Co., 185 USPQ 630, 637 (TTAB 1975):

> [I]t is well established that the expressions
> of opinion by witnesses, including persons
> considered to be experts in a particular field
> on any question before the Board, is not
> binding upon the Board for "if such testimony
> were adopted without considering other aspects
> of the case, the effect would be to substitute
> the opinion of the witnesses for the ultimate
> decision to be reached by the Court and would
> therefore be improper." The Quaker Oats
> Company v. St Joe Processing Company, Inc. [232
> F.2d 653,] 109 USPQ 390 at 391 (CCPA 1956)
> [additional citations omitted].

*See also* Ferro Corp. v. Nicofibers, Inc., 196 USPQ 41, 45 (TTAB 1977)(purchasers' "understanding of the marks must be determined in light of the relevant purchasing sector and

14

not that of linguistics experts or those familiar with the meaning or derivation of words"). As such, the opinion offered by Professor Ward as to the descriptiveness of applicant's "BEER 1," "ONE BEER, BEER 1" and "BEER 1 MMVII and design" marks, as opposed to any factual matters within his area of linguistic expertise or personal knowledge, is of virtually no probative value in this case. *See* Mennen Co. v. Yamanouchi Pharmaceutical Co., Ltd., 203 USPQ 302, 305 (TTAB 1979) at n.4.

Furthermore, conspicuously absent from the record is any empirical evidence, such as surveys, excerpts from newspapers, magazines, trade journals, the internet and the like, showing that consumers perceive the marks as descriptive. Applicant has made of record a definition, taken from Random House Webster's College Dictionary (2d ed. 1999), of "one" clearly showing that the word "one" has multiple meanings, and in this case twenty-four. They include, in part:

> adj. 1. Being or amounting to a single unit or individual or entire thing: one child; one piece of cake. 2. being an individual instance or member of a number, kind, or group indicated; one member of the party. 3. existing, acting, or considered as a single unit or entity. 4. of the same or having a single kind, nature or condition; of one mind. … 8. being a particular, unique, or only individual item, or unit: the one person I can trust. … 11. the first and lowest whole number, being a cardinal number; unity. 12. a symbol of this number, as 1 or I. 13. a single person or thing; one at a time. … 15. a person

15

or thing of a number or kind indicated or understood; one of the Elizabethan poets. … 17. any person or thing indefinitely, anyone or any thing; as goods as one could desire….

In analyzing the composite mark BEER 1, we note that "beer" has been disclaimed, as it is generic for applicant's goods. However, several of the meanings of "one" listed above are equally plausible in the context of applicant's goods. For example, a consumer is just as likely to perceive the number "1" in the mark as meaning "unique" or "only" as he or she is to perceive the number as "a ranking." As the *Tanners* panel explained, "an impression of a trademark is generally gleaned at first impact or encounter in the marketplace; and while there may be close scrutiny of the goods sold thereunder, it is unlikely that the average purchaser in the normal environment surrounding the marketplace would likewise engage in a close inspection of the mark and attempt to dissect and analyze each portion thereof to determine its derivation and meaning." *Tanners' Council*, 185 USPQ at 637. We find the combination of the term "Beer" and the number "1" may not necessarily be perceived by consumers as "a beer ranked #1, as it may just as likely be interpreted by them as "unique beer" or "only beer." That is to say, while "BEER 1" may have some suggestive significance, the record is devoid of credible evidence that establishes that BEER 1 would be perceived by

16

the purchasing public as meaning "beer that is ranked #1" and thus merely descriptive of beer.

Because multiple meanings can be ascribed to the word "one" (or the numeral "1") in the mark, we likewise find that the evidence of record fails to establish that the term ONE BEER, BEER 1 would be perceived by purchasers as signifying a quality, feature or characteristic of beer. By way of example, a purchaser could view the mark as meaning a single beer, a unique beer or, put another way, if one could only have a single beer, think BEER 1. As explained, the Ward testimony, alone, is unpersuasive and opposer has introduced no objective evidence to show that the consuming public would immediately regard ONE BEER, BEER 1 as describing a particular feature, aspect or characteristic of applicant's beer. We find that only after some degree of thought, imagination or a multistage reasoning process would a purchaser encountering beer sold under the mark ONE BEER, BEER 1 believe, if then, that the mark merely describes something specific about applicant's beer.

Last, we find unavailing opposer's arguments that applicant's applied-for mark BEER 1 MMVII and design,

, is merely descriptive. First, the mark is not merely a visually representation of applicant's beer, or of

17

a significant characteristic thereof.  Although, as admitted by applicant, a mug of beer is depicted in the lower left quadrant of the design, it is but a single element in a complex design that is enclosed in a three-banded oval which also includes the term "BEER," the number "1," the Roman numerals "MMVII" (2007) placed over a rising sun, two barley heads, and three diagonal bands which transect the oval.[9] Though the literal elements have been disclaimed as severable, we find the overall design is unitary, all of the pictorial elements either being encompassed within, or overlaying, the oval, such that the overall design is evocative of a crest.  More generally, we find the dissection of a logo in this fashion is an inappropriate attempt to ascribe descriptive significance to its individual elements.  Here too, the expert linguist has gone far beyond his claimed area of expertise.[10]  We thus find that the mark, as a whole, is not a merely descriptive illustration of an important feature or characteristic of applicant's beer.

---

[9]  We reiterate that the literal elements in the composite mark, i.e., the term "Beer," the number "1" and the Roman numeral "MMVII" have been disclaimed.

[10]  On this point, Professor Ward testified:
       Q.  Do you have any educational background that might assist you in analyzing design marks?
       A.  Design marks specifically, no.

Opposer has strenuously argued that the case law supports its position that its linguistic expert testimony is relevant and useful. We disagree. While credible expert testimony may be useful under certain circumstances in discerning the meaning or meanings of words, it is no substitute for evidence of how the purchasing public perceives a term (or picture or illustration) in reaching the ultimate conclusion on the issue of mere descriptiveness. Indeed, the case included in the McCarthy citation opposer relied upon to support its proposition that such evidence is relevant and probative on the issue of descriptiveness, Stix Products, Inc. v. United Merchants & Mfrs., Inc. 295 F. Supp 479, 160 USPQ 777 (S.D.N.Y. 1968), supports this position. In *Stix*, the court recognized that in determining whether a word used in advertising and promotional campaigns is descriptive, the word's meaning to a non-purchasing segment of the population is not of significance; rather the critical question is what it means to the ultimate consumer. The *Stix* Court particularly stated in regard to the opinion by a linguistic expert "[t]hat stress patterns in a compound phrase may convey generic meaning to a linguist, a scientific language expert, does not necessarily make the phrase generic as far as the consuming public is concerned." Stix Products, 160 USPQ at 786.

In addition, the nonprecedential Board cases cited by opposer can be distinguished. In those cases, the Board did not rely solely on expert opinion to form a conclusion on the ultimate issue of descriptiveness. Rather the expert testimony was treated simply as a piece of the puzzle, which included empirical evidence such as dictionary definitions, competitor and other third-party uses and/or the competitor's own use.

Last, we are not persuaded that the facts of this case differ such that we should deviate from the Board's position on expert testimony set forth in *Plyboo America, supra*. Opposer stresses that unlike the expert in *Plyboo*, its linguistic expert familiarized himself with certain sections of trademark treatises. While that may be so, there is simply nothing that persuades us that the lone opinion of opposer's asserted linguistics expert should substitute for evidence of the perception of the consuming public of the involved marks, or substitute for the Board's ultimate determination of the issue of mere descriptiveness in the matters before us.

For the reasons discussed above, we find that opposer has failed to carry its burden to show that members of the purchasing public will view applicant's marks "BEER 1," "ONE BEER, BEER 1" and "BEER 1 MMVII and design" as merely

20

describing a feature, characteristic or quality of applicant's beer.

**DECEPTIVELY MISDESCRIPTIVE**

We now address opposer's alternative claim that applicant's applied-for marks are deceptively misdescriptive of the goods identified thereunder.  Opposer contends that:

> Here, Opposer has already demonstrated that Applicant's Alleged Marks are merely descriptive of Applicant's product.
> Further, Applicant has admitted that he has no research, studies or opinion polls that relate or refer to Applicant's Alleged Marks or his beer, and that he has not received any award or ranking regarding beer.  … As such, [it] is not possible that applicant's beer could actually be ranked #1 in any respect.  However, this misrepresentation is believable, as demonstrated both by common sense - manufacturers often tout their ranking as against competitors – and by the linguistic analysis conducted by Professor Ward.  … Applicant's Alleged Marks are therefore deceptively misdescriptive without secondary meaning.

(Opposer's brief pp. 15-16.)

In order for a mark to be found deceptively misdescriptive within the meaning of Section 2(e)(1) of the Trademark Act, 15 U.S.C. 1052(e)(1), and thus unregistrable, it must immediately convey an idea about the goods or services, but that idea, though plausible, must be false. See In re Woodward & Lothrop Inc., 4 USPQ2d 1412 (TTAB 1987).  The test for determining whether a term is deceptively misdescriptive as applied to the goods involves a two-part determination of (1) whether the matter sought to

21

be registered misdescribes the goods, and (2) whether anyone is likely to believe the misrepresentation.  See In re Quady Winery, Inc. 221 USPQ 1213 (TTAB 1984).

For the reasons discussed above, we find that none of applicant's applied-for marks immediately conveys to the consuming public, as opposer contends, the idea that applicant's beer is ranked number one and, thus, applicant's "BEER 1," "ONE BEER, BEER 1" and "BEER 1 MMVII and design" marks make no representation, false or otherwise, regarding any beer ranking.  Thus, applicant's goods are not misdescribed and opposer has failed to meet the first prong of the test with regard to applicant's marks being deceptively misdescriptive.

## DISCLAIMER REQUEST

As a final matter, opposer requested that in the event we find applicant's BEER 1 MMVII and design mark capable of registration, the Board require applicant to disclaim all descriptive elements of the mark.  As noted previously herein, the literal and severable elements of the mark have already been disclaimed and the pictorial elements comprise a unitary composite mark.  See, e.g., In re Texsun Tire and Battery Stores, Inc. 229 USPQ 227, 229 (TTAB 1986)("[T]he portion of the outline of the map of Texas encircled as it is with the representation of a tire surrounded by a rectangular border results in a unitary composite mark which

is unique and fanciful."). We accordingly find no other elements severable and no further disclaimers are required.

In sum, applicant's marks are neither descriptive nor deceptively misdescriptive of applicant's goods under Section 2(e)(1).

*Decision:* The combined opposition against Application Serial Nos. 77065796, 77063889 and 77090584 is dismissed.